### SHORT v. UNITED STATES et al.
### No. 31596.

United States District Court
N. D. California, S. D.
Aug. 11, 1954.

Clark & Morton, Berkeley, Cal., for plaintiff.

Lloyd H. Burke, U. S. Atty., Richard C. Nelson, Asst. U. S. Atty., San Francisco, Cal., for defendant United States.

Severson, McCallum & Davis, San Francisco, Cal., for defendant Berkshire Industrial Farm.

Frank V. Cornish, Berkeley, Cal., for defendant James Harvey Short.

MURPHY, District Judge.

This is an action contesting a Veteran Administration's ruling concerning the disposition of the proceeds of a National Service Life Insurance policy. Jurisdiction is invoked under Section 14 of the Insurance Act of 1946.[1]

The facts were stipulated. They need be set out only briefly. Irving Short died in Japan on August 30, 1950. He had in effect a Ten Thousand Dollar ($10,000) policy of National Service Life Insurance. His mother, Ethel Short, was the principal beneficiary. She was not entitled to a lump-sum payment of the proceeds. Harvey Short, Irving's brother, and Berkshire Industrial Farm of Canaan, New York were equal contingent beneficiaries: On September 25, 1950 Mrs. Short filed claim with the Veterans' Administration for the pro-

ceeds of the policy. Mrs. Short died on June 14, 1951. The Veterans' Administration did not receive the report of death of the insured it required from the State Department until July 3, 1951. Mrs. Short and her attorneys had previously sent to the Veterans' Administration a telegram which she had received from the Adjutant General, Department of the Army, Washington, D. C., stating that her son Irving was dead. They had also sent a certificate which was accepted by the Prudential Life Insurance Company for payment on that company's policy on Irving's life.

On November 29, 1951, the Veterans' Administration, through the Dependents and Beneficiaries Claims Service, ruled that the estate of Mrs. Short, the principal beneficiary, was entitled to no part of the proceeds and that the contingent beneficiaries were each entitled to one half. This ruling was affirmed by the Board of Veterans' Appeals. Suit was brought by the estate of Mrs. Short joining the United States, the estate of the insured and the two contingent beneficiaries as defendants.

It is clear that had the insured died prior to August 1, 1946, the ruling of the Veterans' Administration would be correct.[2] The National Service Life Insurance Act of 1940 provided explicitly in Section 602(i), (j) and (k) that: (a) The right of any beneficiary to payment of any instalments shall be conditioned upon being alive to receive them; (b) No person shall have a vested right to payment; and (c) No instalments shall be paid to the heirs or legal representatives of the insured or of any beneficiary.[3] But important and far reaching changes applicable to insurance maturing after August 1, 1946 were made by the Insurance Act of 1946.[4]

The restrictions on the permissible classes of beneficiaries were removed.[5]

1. 60 Stat. 788, 789 (1946), 38 U.S.C.A. § 817.

2. U. S. v. Henning, 1952, 344 U.S. 66, 73 S.Ct. 114, 97 L.Ed. 101; Baumet v. U. S., 1952, 344 U.S. 82, 73 S.Ct. 122, 97 L. Ed. 111.

3. 54 Stat. 1010, (1940), 38 U.S.C.A. § 802 (i), (j) and (k).

4. Pub.L.No.589, 79th Cong., 2d Sess., August 1, 1946, 60 Stat. 781 et seq. (1946).

5. Id. at Sec. 4, 60 Stat. 782, (1946), 38 U.S.C.A. § 802(g).

Lump-sum settlements were made available to beneficiaries at the option of the insured.[6] Sections 602(i), (j) and (k) were amended by adding after each section:

"The provisions of this subsection shall not be applicable to insurance maturing on or after [August 1, 1946]."[7]

A new subsection, 602(u), was added[8] which in turn was amended in 1949,[9] so that as that section applies to this policy it reads:

"With respect to insurance maturing on or subsequent to August 1, 1946, in any case in which the beneficiary is entitled to a lump-sum settlement but elects some other mode of settlement and dies before receiving all the benefits due and payable under such mode of settlement, the present value of the remaining unpaid amount shall be payable to the estate of the beneficiary; and in any case in which no beneficiary is designated by the insured, or the designated beneficiary does not survive the insured, or a designated beneficiary not entitled to a lump-sum settlement survives the insured, and dies before receiving all the benefits due and payable, the commuted value of the remaining unpaid insurance (whether accrued or not) shall be paid in one sum to the estate of the insured: Provided, That in no event shall there be any payment to the estate of the insured or of the beneficiary of any sums unless it is shown that any sums paid will not escheat".[10]

The Veterans' Administration pursuant to its general rule making authority under the Act[11] promulgated the following regulation:

"If the principal beneficiary of National Service Life Insurance maturing on or after August 1, 1946, does not survive the insured *or if the principal beneficiary not entitled to a lump-sum settlement survives the insured but dies before payment has commenced, the insurance shall be paid to the contingent beneficiary in* accordance with the provisions of Sec. 8.77. (Emphasis added)[12]

This regulation specifically covers the case before me. Its effect is critical. Although the problems of the scope of review of Administrative regulations have plagued the courts; here, the Veterans' Administration ruling is made expressly reviewable.[13] There is no question of fact involved. The problem is solely one of law. Nor does the legal question require any special administrative experience or technical proficiency.

The problem of whether this regulation is legislative or interpretive, and the incident problems of my power to review its correctness, is solved by United States v. Zazove, 1948, 334 U.S. 602, 68 S.Ct. 1284, 92 L.Ed. 1601. The Supreme Court there read a 1946 Amendment[14] designed to eliminate the finality of the decisions of the Veterans' Administration[15] as "indicative of congressional concern that the regulations of the Veterans' Administration be subject to more than a casual judicial scrutiny when they are based upon a controverted construction of the statute."[16] Such regulations are "not automatically to be

6. Id. at Sec. 9, 60 Stat. 785, 786 (1946), 38 U.S.C.A. § 802(t).

7. Id. at Sec. 5(b), 60 Stat. 783 (1946).

8. Id. at Sec. 9, 60 Stat. 786 (1946).

9. Pub.L.No.69, 81st Cong., 1st Sess., May 23, 1949, 63 Stat. 74, 75 (1949).

10. 38 U.S.C.A. § 802(u).

11. 38 U.S.C.A. § 808, 60 Stat. 788 (1946).

12. Section 10:3941, V. A. Regulations, 13 Fed.Reg. 2584, May 19, 1948; Now, 38 Code Fed.Regs. Sec. 8.91(b).

13. 38 U.S.C.A. § 808, 60 Stat. 788 (1946).

14. Pub.L.No.589, 79th Cong., 2d Sess., Sec. 12, August 1, 1946, 60 Stat. 788 (1946), 38 U.S.C.A. § 808.

15. Sen.Rep.1705, 79th Cong., 2d Sess. 9 (1946); H.R.Rep. 2202, 79th Cong.2d Sess. 10 (1946). See U. S. v. Zazove, 1948, 334 U.S. 602, 611, 612, 168 S.Ct. 1284, 1288.

16. U. S. v. Zazove, 334 U. S. at page 612, 68 S.Ct. at page 1288.

deemed valid merely because not plainly interdicted by the terms of the particular provision construed."[17]

The Veterans' Administration regulations involved in Zazove were reviewed as if the regulations were interpretive. They more closely approached legislative regulations than the regulation involved in this case.[18]

Accordingly, I have carefully examined the statute as a whole, its historical setting and purpose and its legislative history with a view toward testing the validity of the regulation. I recognize that ascertaining legislative intent[19] is not an easy problem and that "he who supposes that he can be certain of the result is the least fitted for the attempt."[20] Nevertheless, this is a judge's function and duty. The result is important in administering National Service Life Insurance.

 The statute must take meaning from its historical setting.[21] War risk insurance legislation has a long history extending continuously from the First World War to the present date. The provisions of the various Acts are set out in U. S. v. Henning, 344 U.S. 66, 71, 72, 73 S.Ct. 114, 97 L.Ed. 101 and need not be repeated here except to state that the Acts show a clear pattern of Congressional policy: Statutes enacted in war crises narrow the range of beneficiaries and put stringent limitations on the rights of estates to take. Peace-time legislation broadens both the class of permissable beneficiaries and the rights of estates to take.

 The purpose of the 1946 Amendment was to place National Service Life Insurance on a peace-time basis;[22] to remove restrictions placed in the 1940 Act which drastically limited payments of insurance proceeds because of the added war-time hazards.[23] With the war-time hazards ended, the Insurance Fund was to be like that of other Mutual

---

17. Id., 334 U.S. at page 611, 68 S.Ct. at page 1288.

18. The distinction between legislative and interpretative rules is not always clear. Here the V. A. rule making power extends to rules "not inconsistent with the provisions of the Act" and "necessary or appropriate to carry out its purposes". Sec. 608 of N.S.L.I. Act of 1940, 54 Stat. 1012, 1013 (1940), 60 Stat. 788 (1946), 38 U.S.C.A. § 808. The validity of regulations promulgated under this section depend in large part on whether they properly interpret the Act.

19. A Judge's function in looking for "legislative intent" or indeed if it is ever ascertainable is subject to much controversy. Compare: Radin, Statutory Interpretation, 43 Harv.L.Rev. 863 (1930) with Landis, A Note on "Statutory Interpretation", 43 Harv.L.Rev. 886 (1930). See Sparkman, Legislative History and Interpretation of Laws, 2 Ala. L.Rev. 189 (1950). It is at least a short way of describing one process of interpreting Statutes. I use the words in that sense.

20. Judge Learned Hand in U. S. v. Klinger, 2 Cir., 1952, 199 F.2d 645, 648. See U. S. v. Henning, 1952, 344 U.S. 66, 79, 73 S.Ct. 114, dissenting opinion.

21. U. S. v. Henning, 1952, 344 U.S. 66, 73 S.Ct. 114; U. S. v. Zazove, 1948, 334 U.S. 602, 68 S.Ct. 1284.

22. Statement of Congressman Rankin, sponsor of the bill and chairman of House Committee on World War Veterans' Affairs in reporting the bill on the floor. 92 Cong.Rec. 6169 (1946).

23. Mr. Rankin told the House that "Several years ago there was a bright scheme concocted to bypass the Veterans' Committee, and at the other end of the Capital an insurance bill was placed as a rider on a tax bill, * * * the Committee * * * could not touch it. As a result they emasculated the insurance law so badly that it became necessary for us to bring out this bill to correct injustice", 92 Cong.Rec. 6169, (1946). The legislative history of the 1940 Act is very sketchy. See H.R.Rep. No.2894, S.Rep.No.2111, H.R.Rep.No. 3002, 76th Cong. 3rd Sess. (1940). The testimony of Mr. Harold Breining, Assistant Administrator for Insurance, Veterans' Administration, Hearings before the Subcommittee on Insurance of the Committee on World War Veterans' Legislation, House of Representatives, 79th Cong.2d Sess., on H.R. 5772 and H.R. 5773 (p. 73) sets out the reasons for the 1940 restrictions.

Companies.[24] National Service Life Insurance was to conform more readily with the provisions of commercial insurance.[25]

With this general purpose behind us— What does Section 602(u) provide?

Read with complete literalness, the proceeds of the insurance go to the estate of the insured. "A designated beneficiary not entitled to a lump-sum settlement (Ethel Short) [died] before receiving all the benefits due and payable". But this reading of the statute would exclude the possibility of a contingent beneficiary taking anything after the death of the principal beneficiary. The statute does not require this result. Let us look at the legislative history of the Act. Whatever the present inviolability of the plain meaning rule [26] the statute is not so clear as to render an inquiry into the legislative history unnecessary. The three contingencies upon which the estate of the insured takes are quite reasonably read as covering situations where no beneficiary is alive to take the remaining proceeds of insurance. While the act does not specifically set out the right of contingent beneficiaries, Section 602(t) [27] speaks of payment to the "first beneficiary". This implies the possible existence of a second. The 1940 Act was construed as recognizing the right of a contingent beneficiary to take after the death of the principal beneficiary.[28] I find nothing in the 1946 Act which would indicate that this result was meant to be changed.

■ The legislative history of the 1949 Amendments to Section 602(u) makes it clear that the section was not intended to place the unpaid balance in the estate of the insured when there were contingent beneficiaries still living.[29]

---

24. Testimony of Mr. Breining, Hearings, supra, Note 23 (p. 73, 74, 78); Testimony of General Omar Bradley, Veterans' Administrator, Hearings, supra, Note 23 (p. 6).

25. Testimony of General Bradley, Hearings, supra, Note 23 (p. 6). Rep. Cunningham, member of the Committee on World War Veterans' legislation, stated on the floor of the House that the bill "will give to the veterans the same kind of insurance, approximately, that he would buy in a commercial policy from any old line company". 96 Cong.Rec. 6171 (1946). See exchange between Congressman Allen and Mr. Breining, Hearings, supra, Note 23 p. 73.

26. Compare Consolidated Flower Shipments Inc., v. C. A. B., 9 Cir., 1953, 205 F.2d 449, with American Fire & Casualty Co. v. Finn, 1951, 341 U.S. 6, 10, 71 S.Ct. 534, 95 L.Ed. 702; Markham v. Cabell, 1945, 326 U.S. 404, 409, 66 S.Ct. 193, 90 L.Ed. 165; U. S. v. Dickenson, 1940, 310 U.S. 554, 562, 60 S.Ct. 1034, 84 L.Ed. 1356. See Jones, The Plain Meaning Rule and Extrinsic Aids in the Interpretation of Federal Statutes, 25 Wash.U.L.Q. 2, 17–18 (1939).

27. 60 Stat. 785, 786 (1946), 38 U.S.C.A. § 802(t).

28. Washburn v. U. S., D.C.W.D.Mo.1945, 63 F.Supp. 224.

29. The Executive Assistant Administrator for Veterans' Affairs, G. W. Clark, sent the proposed amendment as it was passed to Senator Vandenburg, President pro tem of the Senate recommending passage. In this letter he sent out the V. A. regulations construing the unamended act [but not the regulation critical in this case] stating that he believed the regulation correctly interpreted the law but asked for the amendment to clarify the situation. Those regulations read the word "beneficiary" in Section 602(u) as "including a contingent beneficiary" so that the estate of the insured would take

(1) "if the designated beneficiary (including a contingent beneficiary) does not survive the insured;

(2) "if the designated beneficiary (including a contingent beneficiary) not entitled to a lump-sum settlement survives the insured and dies before payment has commenced;

(3) "if the designated beneficiary (including a contingent beneficiary) not entitled to a lump-sum settlement survives the insured and dies after payment has commenced but before receiving all the benefits due and payable".

The estate would take under the regulation only when no beneficiaries were alive to receive payment.
This letter was reprinted in Sen.Rep. 50, 81st Cong., 1st Sess. (1949) and

This brings us to the question of whether the estate of the principal beneficiary is entitled to those payments which accrued[30] during her lifetime but which were not paid, as against the claims of the contingent beneficiaries. The question is whether the Act requires, as to insurance matured after August 1, 1946, that the principal beneficiary be alive in order to receive payment as against the contingent beneficiaries.

I take it as self-evident that the provisions of Section 602(i), (j) and (k) do not require it. They are expressly inapplicable to this policy. Nor do I find any other provision in the 1940 Act which would require it. The Veterans' Administration ruling that Mrs. Short's estate could not take because *"the National Service Life Insurance Act of 1940* provides that \* \* \* the designated beneficiary has no vested rights in the proceeds until receipt thereof",[31] is not sound if based, as it apparently is, on the 1940 Act. (Emphasis added.)

Does Section 602(u) preclude payment to Mrs. Short's estate? I think not. The legislative history of the 1946 Amendment shows clearly that Section 602(u) was designed to cover only the final disposition of insurance not paid to a designated beneficiary.[32] Under the

---

H.R.Rep. 273, 81st Cong., 1st Sess. (1949).

30. The 1949 Amendment inserting the words "whether accrued or not" recognizes that the payments accrue before actual payment. The Veterans' Administration Regulations recognize that they accrue. 38 C.F.Reg.Sec. 8.88.

31. Letter, Director, Dependents and Beneficiaries Claim Service, Nov. 29, 1951.

32. The bill as passed by the House, H.R. 6371, 79th Cong., 2d Sess. (1946) was introduced by Mr. Rankin after extensive hearings. The Veterans' Administration sponsored a bill (H.R. 4965) which provided in Section 5: " \* \* \* As to hereafter matured insurance, if no person is designated as beneficiary by the insured, the insurance shall be paid in one sum to the estate of the insured; and if the *last surviving* beneficiary dies prior to receiving all the insurance payable, the commuted value of any unpaid instalment certain remaining unpaid shall be paid in one lump-sum to the estate of such beneficiary \* \* \*." (Emphasis added.)

In the V. A. summary of the bill this Section was headed "Disposition of insurance not payable or paid to a designated beneficiary", Hearings, supra, Note 23 (p. 8). This section clearly only provided for the disposition of the insurance after there was no beneficiary alive to receive them.

The American Legion, the Veterans of Foreign Wars and the Disabled American Veterans rewrote their previously introduced bills with the V. A. bill in mind. That rewritten bill (H.R. 5772) contained Section 602(u) as it was enacted in Mr. Rankin's bill (H.R. 6371). The V. F. W. representative testified before the Committee that this Section was only "a rewrite" of Section 5 of the V. A. bill. Hearings, supra, Note 23 (p. 123). However, one substantive change was made. Under the V. A. bill "if the last surviving beneficiary dies prior to receiving all the insurance payable" the unpaid balance was payable to the estate of the beneficiary. Under H.R. 5772 and H.R. 6371 if the beneficiary was "entitled to a lump-sum settlement but elects some other mode of settlement and dies before receiving all the benefits due and payable" the remainder was payable to the *estate of the beneficiary.* If, however, "a designated beneficiary not entitled to choose a lump-sum settlement survives the insured and dies before receiving all the benefits due and payable" the remaining insurance goes to *the estate of the insured.*

This change, which sent the remaining unpaid insurance to the estate of the insured rather than to the estate of the beneficiary where the beneficiary was not entitled to a lump-sum settlement, related only to the unpaid balance. The written summary accompanying H.R. 5772 stated that this section "Provides for payment of unpaid balance of insurance proceeds to estate of the insured generally. Payment to a beneficiary's estate will only be made if a beneficiary dies when receiving instalment payments elected in lieu of a lump-sum settlement". Hearings, supra, Note 23, (p. 164). Mrs. Rogers, ranking minority member of the Committee echoed these words in the House debates, 92 Cong.Rec. 6171 (1946). The section was meant to cover the disposition of the unpaid balance in contrast to their disposition under the 1940

1940 Act if no beneficiary within the permitted class was alive to receive payment, the unpaid balance reverted to the Treasury.[33] This provision together with the limited class of permitted beneficiaries was designed to limit the payments, increased by wartime hazards, to those who were likely to be dependent upon the insured or to whom the insured owed some moral obligation.[34] They were removed from the 1946 Act and subsection (u) substituted[35] to govern the payment of the unpaid balance of insurance which was payable in instalments.[36]

Subsection 602(u) was not meant to be exclusive of all receipt of payments by estates. If it were, as to beneficiaries entitled to a lump-sum settlement, their estates could take only if such beneficiary elected "some other mode of settlement and [died] before receiving all the benefits due and payable". If a beneficiary did not so elect, and Section 602(u) were exclusive of payments to estates, no payment would be made. The other provisions of 602(u) are inapplicable. But, the clear purpose in placing 602(u) in the Act was to abrogate the result under the 1940 Act, where if no beneficiary was alive to receive payment, the insurance remained unpaid and reverted to the Treasury.[37] The Veterans' Administration regulations provide that in this situation the unpaid balance is payable to the beneficiary's heirs.[38]

The 1949 Amendments to Section 602 (u) which added the words "whether accrued or not" after the words "remaining unpaid insurance" does not preclude the estate of the beneficiary taking *as against the contingent beneficiaries.*

The purpose of the Amendment was "to make it clear that as to insurance maturing on or after August 1, 1946, in cases where the beneficiary could not have elected to receive in a lump-sum settlement, any accrued instalments on such insurance not paid to such beneficiary during his lifetime shall be paid to the estate of the insured rather than to the estate of the beneficiary".[39]

I have been unable to discover, and counsel have not cited any other portion of the 1946 Act or any legislative history which would require or infer that the principal beneficiary must be alive

---

Act where the unpaid balance reverted to the Treasury. Representative Rankin, in reporting the bill said: " * * * that the remainder of any insurance not paid to the beneficiary shall be paid to the estate of the insured, except that if the beneficiary could have claimed a lump-sum payment but chose to be paid in instalments the amount remaining after the beneficiary's death will be paid to the estate of the beneficiary. Under existing law if there is no person within the permitted class of beneficiaries above specified living to receive payment of insurance no payments are made". 92 Cong. Rec. 6170 (1946).

33. U. S. v. Henning, 1952, 344 U.S. 66, 73 S.Ct. 114. Mr. Rankin so informed the House. 92 Cong.Rec. 6170 (1946).

34. See Note 23, supra.

35. The amendments to Section 602(i), (j) and (k) making them inapplicable to insurance maturing after August 1, 1946, were contained in Section 602(u) when the Act passed the House. 96 Cong.Rec. 6168, 6174 (1946). The Senate Committee made them two separate sections. Id. at 9209, 9210, 9211. The House acceded without conference. Id. at 9568, 9569. Mr. Rankin stated that the Senate made only five changes not material here, Id. at 9668.

36. Section 602(u) relates only to insurance payable in instalments, except where the beneficiaries do not survive the insured. The two contingencies under which the estate of the insured take involve a beneficiary not entitled to receive a lump-sum. The contingency upon which the estate of the beneficiary takes requires the right to receive a lump-sum but an election of "some other mode of settlement". These "other modes" are all instalment payments. 38 U.S.C.A. § 802(t).

37. See note 32 supra, particularly Mr. Rankin's statement at 92 Cong.Rec. 6170 (1946).

38. 38 Code Fed.Reg., Sec. 8.90.

39. Sen.Rep. 50, H.R.Rep. 513, 81st Cong. 1st Sess. (1949).

to take as against contingent beneficiaries.[40]

What is there to be said on the other side? The restrictions on payments to estates found in Section 602(i), (j) and (k) of the 1940 Act were expressly removed. They were removed because they related to a system which assumed at government expense the hazards of war-time deaths and in which payments were limited to a restricted class of beneficiaries. "Such provisions would not be in conformity with the disposition of insurance, payment of which is not limited to a restricted class of beneficiaries".[41] Within the general purpose of the 1946 Act, to conform with commercial insurance as far as possible, the Congressional concern with payments to estates was removed. Instalment payments remaining unpaid were specifically payable to estates.[42]

I cannot believe that Congress intended that the rights of the principal beneficiary could be defeated by an administrative failure to pay or by litigation over the proceeds extending beyond that beneficiary's death. This idea of elementary justice is not, as is contended by both defendants, removed as it applies to the construction of this Statute by U. S. v. Henning. It is true that Henning held that under the 1940 Act a beneficiary must be alive to take, and that delay in payment, whether attributed to administrative inaction or litigation, would not change the result. But this result was wholly based on the explicit provisions of Section 602(i), (j) and (k) and the Congressional pattern of drastically restricting the rights of beneficiaries to take in war-time. Both these reasons have disappeared. Subsections (i), (j) and (k) explicitly do not apply. The war-time policy has been reversed.

It is persuasive that even under the strict language of the 1940 Act,[43] both circuits which considered the problem[44] two Justices of the Supreme Court[45] and District Judge Wysanski[46] held that the estate of the beneficiary could take those instalments which accrued prior to the beneficiary's death. The three District Courts which held to the contrary did so on the basis of subsection (i), (j) and (k) alone.[47] Under the 1919 Act—war-time legislation—the estate of the beneficiaries took payments which accrued prior to the beneficiaries' death.[48]

I hold that under the 1946 Act, as amended, the estate of Mrs. Short is entitled to those unpaid instalments which accrued prior to her death and that the contingent beneficiaries share the balance equally.

The facts stipulated between the parties and this memorandum opinion will constitute the findings of fact and conclusions of law required under Rule 52 (a), Fed.Rules Civ.Proc. 28 U.S.C.A. Let a draft of a judgment embodying this decision be submitted in accordance with the local rule.

40. The statement of Mrs. Rogers in debate referred to in Note 32, supra, if taken out of context would support this view. In context, however, it refers only to that instance where the unpaid balance would go to the estate of the beneficiary rather than the insured's estate. Counsel for defendant do not cite this for their position, and I think advisedly so.

41. Sen.Rep. 1705, 79th Cong., 2d Sess. (1946).

42. See Note 36, supra.

43. These provisions were characterized by the Supreme Court as an "unmistakable legislative purpose, expressed in so clear a congressional command". U. S. v. Henning, 1952, 344 U.S. 66, 76, 73 S.Ct. 114, 119.

44. U. S. v. Henning, 1 Cir., 1951, 191 F.2d 588; Baumet v. U. S., 2 Cir., 1949, 177 F.2d 806.

45. Mr. Justice Jackson and Mr. Justice Frankfurter dissenting in U. S. v. Henning, 1952, 344 U.S. 66 at page 79, 73 S.Ct. 114.

46. Henning v. U. S., D.C.Mass.1950, 93 F.Supp. 380.

47. Washburn v. U. S., D.C.W.D.Mo.1945, 63 F.Supp. 224; Baumet v. U. S., D.C. S.D.N.Y.1948, 81 F.Supp. 1012; Carpenter v. U. S., D.C.W.D.Pa.1947, 72 F. Supp. 510.

48. Cassarello v. U. S., D.C.M.D.Pa.1919, 271 F. 486.