Volney DAVIS, Appellant,

v.

UNITED STATES of America, Appellee.

No. 15229.

United States Court of Appeals Eighth Circuit.

Nov. 4, 1955.

Allen H. Surinsky, Clayton, Mo. (appointed by court), for appellant.

Alex Dim, Asst. U. S. Atty., and George E. MacKinnon, U. S. Atty., St. Paul, Minn., for appellee.

Before WOODROUGH, JOHNSEN and VOGEL, Circuit Judges.

VOGEL, Circuit Judge.

On December 9, 1952, Volney Davis filed in the United States District Court for the District of Minnesota a motion, pursuant to 28 U.S.C. § 2255, to set aside, vacate and nullify or reduce a life sentence of imprisonment imposed on him by the United States District Court for the District of Minnesota on June 7, 1935, pursuant to his entry of a plea of guilty to an indictment charging that he and others conspired to kidnap one Edward George Bremer at St. Paul, Minnesota, and transport him into the State of Illinois. 18 U.S.C. § 408a, now 18 U.S.C. § 1201.

Judge Matthew M. Joyce, the judge who had presided at the arraignment of Davis and had sentenced him, denied petitioner's motion on the ground that, "The files and records show conclusively that the petitioner is entitled to no relief * * *". An appeal from such order was taken to this court. In Davis

v. United States, 210 F.2d 118, this court reversed the order appealed from and remanded the case for the purpose of giving the petitioner an opportunity to be heard on what this court termed the three remaining issues under consideration; namely, the assertions by the petitioner that:

1. He did not know of his constitutional right to counsel;

2. That he did not waive that right;

3. That he was led to believe he would be given a term of years if he entered a plea of guilty.

Upon a remand of the case to the United States District Court for the District of Minnesota, Judge Joyce disqualified himself and the hearing was held before Chief Judge Gunnar H. Nordbye. After the mandate from this court was returned to the district court, the petitioner was removed from the United States Penitentiary at Leavenworth, Kansas, wherein he was at that time confined, to St. Paul, Minnesota, and two attorneys, Mr. Harlan B. Strong, of Minneapolis, Minnesota, and Mr. Howard H. Gelb, of St. Paul, Minnesota, were appointed by the court to represent him. A substantial period of time prior to the commencement of the hearing was allowed to enable appointed counsel to prepare for the hearing. The right to subpoena witnesses at the expense of the United States was accorded the petitioner and all witnesses he desired to call and who could be located were made available to him. The hearing and preparations therefor were apparently held with meticulous care and consideration for the petitioner's rights.

■■■ The judgment of conviction based upon Davis' plea of guilty carried with it the presumption of regularity. The burden of proof at the hearing on Davis' present motion rested upon him to establish by a fair preponderance of the evidence that he did not know his constitutional right to counsel or that he did not waive that right or that he was led to believe he would be given a term of years if he entered a plea of guilty.

Johnson v. Zerbst, 1937, 304 U.S. 458, 468, 58 S.Ct. 1019, 1025, 82 L.Ed. 1461:

"It must be remembered, however, that a judgment cannot be lightly set aside by collateral attack, even on *habeas corpus*. When collaterally attacked, the judgment of a court carries with it a presumption of regularity. Where a defendant, without counsel, acquiesces in a trial resulting in his conviction and later seeks release by the extraordinary remedy of *habeas corpus*, the burden of proof rests upon him to establish that he did not competently and intelligently waive his constitutional right to assistance of counsel. If in a *habeas corpus* hearing, he does meet this burden and convinces the court by a preponderance of evidence that he neither had counsel nor properly waived his constitutional right to counsel, it is the duty of the court to grant the writ."

United States v. Morgan, 1954, 346 U.S. 502, 512, 74 S.Ct. 247, 253, 98 L.Ed. 248:

"Of course, the absence of a showing of waiver (of counsel) from the record does not of itself invalidate the judgment. It is presumed the proceedings were correct and the burden rests on the accused to show otherwise. Johnson v. Zerbst, supra, 304 U.S. at page 468, 58 S.Ct. 1024; Adams v. United States ex rel. McCann, supra, 317 U.S. [269] at page 281, 63 S.Ct. [236] at page 242, 87 L.Ed. 268; cf. Darr v. Burford, 339 U.S. 200, 218, 70 S.Ct. 587, 597 [94 L.Ed. 761]."

The hearing commenced on July 7, 1954, and was concluded on July 12, 1954. In a detailed opinion, findings and conclusion (Davis v. United States, D.C., 123 F.Supp. 407, 414), Judge Nordbye came to the conclusion that:

"After due reflection and consideration of all of the evidence, I have come to a sustained and abiding conviction that when Volney Davis entered his plea of guilty on June 3,

1935, he competently, intelligently, and understandingly waived his constitutional rights to be represented by counsel under the Sixth Amendment to the Constitution of the United States, with a full understanding of the implications thereof,"

and accordingly denied petitioner's motion. Davis has now appealed therefrom.

No record or transcript of the arraignment proceeding held on June 3, 1935, was made other than the clerk's notations, which show the following entry:

"The United States Attorney, Geo. F. Sullivan, being present the defendant Volney Davis appears and is arraigned. Upon being questioned by the Court said defendant stated that he did not desire the advice of counsel and entered a plea of guilty to the charge in the indictment herein.

"Whereupon, it is by the Court

"Ordered: That sentence be and same hereby is deferred to June 7, 1935."

With reference to June 7, 1935, the clerk's records indicate that Volney Davis appeared "with his Attorney". The latter entry was obviously incorrect and on October 10, 1939, an order amending the judgment was made to show that Volney Davis appeared "without an attorney".

The transcript of the July 7–12, 1954, proceedings before Judge Nordbye, consisting of 715 pages, was furnished to the appellant and his attorneys in this appeal.

The evidence discloses that Edward George Bremer was kidnapped at St. Paul, Minnesota, on January 17, 1934. On January 22, 1935, Volney Davis, the petitioner herein, along with a number of other persons, was indicted for conspiracy to kidnap and transport Bremer, in violation of 18 U.S.C. § 408(a), now Section 1201.

Davis was arrested in Kansas City on February 17, 1935, but escaped from custody while being transported from Kansas City to Chicago. On June 1, 1935, Davis was again arrested, this time in Chicago, Illinois, and the following day was taken by airplane from Chicago to Minneapolis. On June 3, 1935, he was arraigned before Judge Joyce. He appeared without counsel, entered a plea of guilty and four days later, on June 7, 1935, was sentenced by Judge Joyce to life imprisonment.

Volney Davis was born January 29, 1902, in Cherokee Nation, Oklahoma. He went to the sixth grade in school, and while there met Freddie Barker, later of the infamous Barker-Karpis gang. When Davis was 17 years old, he was sentenced to the Oklahoma penitentiary to serve three years for theft. In 1922, represented by counsel, he was tried to a jury and found guilty of first-degree murder and sentenced to life imprisonment in the Oklahoma State Penitentiary. He served such sentence from February, 1923, until November, 1932, at which time he received an eight months' leave. Subsequently he received an additional twelve months' extension. Upon obtaining his leave from the penitentiary, he immediately joined up with the Barker-Karpis gang, receiving money from them from time to time.

After the extended twelve months' period of leave from the Oklahoma penitentiary expired, Davis deliberately failed to return to the penitentiary and became a fugitive. Some of the members of the Barker-Karpis gang, with which Davis was associated, kidnapped Bremer on January 17, 1934, and transported him to Bensonville, Illinois. He was held for $200,000.00 ransom, which was subsequently paid and he was released. Two indictments were returned by the grand jury of the District of Minnesota, one charging Davis and others with the crime of conspiracy to kidnap Bremer and transport him to Illinois, and the second charging certain defendants, including Davis, with the substantive offense of kidnapping Bremer.

Davis contends that when he appeared before Judge Joyce on June 3, 1935, for arraignment, he did not know of his constitutional right to counsel, that he did

not waive such right and that he was led to believe he would be given a term of years if he entered a plea of guilty. He testified that when he first appeared on June 3, 1935, Judge Joyce asked him if his name was Volney Davis. He replied, "Yes, sir." He claims Judge Joyce then asked, "Have you agreed to enter a plea of guilty?" and he replied, "I would like to know what the maximum sentence is that I could receive for this crime"; that the judge told him, "You could receive up to a life sentence" and Davis then said, "Well, I will enter a plea of guilty to conspiracy"; that the indictment charging conspiracy was read to him and that he thereafter entered a plea of "guilty of conspiracy". He denies that at that time he was asked if he had counsel or was advised of his right to counsel. He claims he pleaded guilty to keep from going back to "isolation" in Oklahoma.

Davis also claims that he was incapable of intelligently and competently waiving his constitutional rights at the arraignment of June 3, 1935, because of alleged happenings between the time of his arrest, June 1st, and the arraignment on June 3rd. He claimed that at the time of his arrest he was struck over the head by something, that a gun was accidently discharged near him, that he was questioned for long periods and was kept in the closest custody; that on the chartered plane trip from Chicago to Minneapolis they encountered flying difficulties at Madison, Wisconsin, and that these combined experiences left him in such a frame of mind that he could not act competently or intelligently.

From June 3rd to June 7th he was confined in the Ramsey County Jail and at some time between those dates he admits he did talk to a lawyer but that the lawyer did not come to see him regarding his case. He claims there was some casual conversation between them regarding the plea he had entered, but that the lawyer told him he could not withdraw his plea and that he was "sunk". (The lawyer referred to also testified, admitting seeing Davis in jail but denying he told Davis he could not withdraw his

plea or that he was "sunk".) Davis claims that on June 7th, when he was returned to court, the judge said to him, "You have entered a plea of guilty to conspiracy," to which he responded, "Yes." He then contends that the judge said, "Do you have a lawyer?" and he responded, "No, I don't need one do I?", and the court thereupon stated, "No, you don't." Thereafter, he contends the court sentenced him to life imprisonment on the plea entered on June 3rd.

At the hearing on petitioner's instant motion, Judge Joyce, the trial judge, also appeared as a witness. His recollection of the case had been refreshed over the years since 1935 because of correspondence with members of the Davis family and with Davis himself and also by reason of a habeas corpus proceeding instituted by Davis in the Northern District of California in 1940, at which time Davis was confined in Alcatraz.

Judge Joyce testified that on the arraignment date, June 3, 1935, he had asked Davis if he had a lawyer and Davis responded in the negative. He next asked him if he had funds with which to hire a lawyer and told him that if he did not, a lawyer would be appointed by the court without cost to him. Judge Joyce testified that Davis stated he did not want a lawyer but wanted the conspiracy indictment read to him. After Judge Joyce was examined by counsel, the record indicates the following:

"The Court: Mr. Gelb, I am going to ask Judge Joyce a question. You feel free to object if you think it is objectionable.

"When Mr. Davis was before you on June 3rd and when you had the colloquy with him, as you have stated, regarding the services of counsel and when, you contend, he stated he didn't want counsel, was it your opinion from your observation of him and the way he answered the questions that he knowingly and intelligently waived the service of counsel?

"The Witness: He certainly did.

"Mr. Gelb: For the record I want to object to the question and the answer to that question on the ground that it calls for a conclusion of the witness and the witness is not competent to testify to that type of question since it goes to the very essence of the question at issue."

Thereafter the objection was overruled.

Judge Joyce's testimony was substantially corroborated by a number of additional witnesses, including newspaper reporters, court attaches and Special Agents of the Federal Bureau of Investigation. Davis' testimony in the main stands unsupported.

Davis' testimony that on June 3, 1935, he was not told of his constitutional right to counsel also loses force from the fact that the record indicates that some of his co-defendants in the same case, but appearing at a different time, had counsel appointed for them by Judge Joyce.

There is also substantial testimony in the record to the effect that Davis told F.B.I. Agents before he went into court for the arraignment that he was going to enter a plea of guilty to the conspiracy charge but not to the indictment charging him with actual kidnapping, that the F.B.I. "had the goods" on him and that it would do him no good to fight, that he had some money but wanted it to go to his parents.

That Davis knew what he was doing and knew that he could receive a life sentence is indicated from a letter written to his family on June 3, 1935, subsequent to entering a plea to conspiracy. In the first paragraph of that letter, Government's Exhibit 11, Davis stated as follows:

"At last I am in a position where I can write to you all again. And I am sure glad that I can for it has been awful to be running around over the country and not being able to write to the only ones in this world that really love me. *I am here in jail and have entered a plea of guilty to conspiring in this case.* I guess you have read about it in the papers. I will be sentenced on Friday this week, *I don't know what I will get but I expect it will be a life sentence.* I guess I will be sent to the Government prison out in California, but before I go there I will be held for thirty days in some prison here." (Emphasis supplied.)

In the face of this and his own testimony that he was advised by the court at his arraignment that the sentence could be "up to life", Davis contends that he did not know the range of allowable punishments. He cites Von Moltke v. Gillies, 1947, 332 U.S. 708, 68 S.Ct. 316, 92 L.Ed. 309, which outlines the safeguards courts are to employ when dealing with waivers of counsel but does not negate the necessity of the petitioner proving his case.

▮ Judge Nordbye's conclusion [123 F.Supp. 414] "* * * that when Volney Davis entered his plea of guilty on June 3, 1935, he competently, intelligently and understandingly waived his constitutional rights to be represented by counsel under the Sixth Amendment to the Constitution of the United States, with a full understanding of the implications thereof" is consequently supported amply in the record and must be sustained by this court. Likewise, Davis' claim that he was led to believe that he would be given a term of years if he entered a plea of guilty is not sustained and there is ample evidence to justify the conclusion of the trial court that Davis knew he could receive up to a life sentence and that he actually expected that the sentence would be for life.

▮▮ There remains in the case only the question of whether or not Davis waived his right to counsel at the time of sentencing, June 7, 1935. A defendant is entitled to be represented by counsel at any stage of the criminal proceedings against him, including the occasion upon which he is sentenced. Counsel may be of great benefit to a defendant at the time of sentencing, particularly through pointing out to the sentencing court extenuating circumstances which

might justify a lesser sentence than would otherwise be imposed or assisting the defendant in other ways. Testifying with reference to what occurred on June 7, 1935, the date of sentence, Judge Joyce, in answer to the question as to whether or not the defendant had a lawyer, replied, "No, he did not have a lawyer. He said he didn't want one so *I took that as definite.*" (Emphasis supplied.) Judge Nordbye, in his opinion, does not make specific reference to the situation as of June 7, 1935, but by his finding regarding the knowledge of right to and waiver of counsel as of June 3rd and the denial of Davis' petition, it is obvious that he inferred an overall waiver of consent by Davis with reference to all subsequent proceedings. We think that conclusion is justified. Further, Davis failed utterly in carrying the burden of proving that there had not been a waiver. We have here an experienced criminal under sentence by another court to life imprisonment for first-degree murder, indicating at the time of his arraignment knowledge of his rights and his desire to waive them and to get it over by a plea of guilty. If that waiver was made competently, intelligently and with a full understanding of his rights, we can see no reason why the court at each subsequent proceedings should go through the mere ceremony of again inquiring if the defendant knew his rights and was then again willing to waive them.

The evidence discloses and Judge Nordbye has found that on June 3, 1935, Davis was apprised of his constitutional rights and competently, intelligently and understandingly waived such rights. It would be straining human credulity to say that he did not possess the same knowledge and intelligence four days later on June 7th. The sentencing of Davis on June 7th was but an extension of the arraignment proceedings. It could have followed immediately and no question could have been raised as to its propriety. Undoubtedly the trial judge, in deferring sentence until June 7th, did so in order that he could receive a pre-sentence report from the probation officer. The fact that the sentencing took place four days after the arraignment could create a need for further inquiry only if something transpired in the interim which justified such further inquiry, such as a request by Davis for counsel and advice when he appeared for sentencing. Davis made no request and made no statement, and accordingly Judge Joyce was entirely justified in taking his prior refusal of counsel as "definite". There was indeed an implied waiver of counsel as to any proceedings subsequent to June 3, 1935. If this were not true, it would mean that in all criminal proceedings where the defendant competently waived the right to counsel and nothing happened in the meantime, such as an unreasonable lapse of time, newly discovered evidence which might require or justify advice of counsel, new charges brought, a request from the defendant, or similar circumstances, he would nevertheless have to be interrogated in the same fashion on each subsequent step therein. That would be neither good law nor good sense.

We accordingly conclude that the trial court was correct in holding that Davis failed to sustain the burden of proof and that there was ample evidence to justify the court's conclusion that Davis competently, intelligently and understandingly waived his constitutional right to counsel and that he was not led to believe that he would be given a term of years if he entered a plea of guilty.

This court is indebted to counsel who represented the petitioner in the district court and to counsel who represented the petitioner on the appeal here for their services which were, of course, without fee.

The order appealed from is affirmed.