Robert Allen HARIG, Petitioner,

v.

Charles WOLFF, Warden, Respondent.

No. CV 74–L–142.

United States District Court,
D. Nebraska.

May 10, 1976.

Ronald Rosenberg, Lincoln, Neb., for petitioner.

Harold Mosher, Robert G. Avey, Asst. Attys. Gen., Lincoln, Neb., for respondent.

URBOM, Chief Judge.

The petitioner, Robert Harig, has filed a petition for writ of habeas corpus. He was convicted in the District Court of Lancaster County, Nebraska, on a multicount information for burglary, unlawful possession of a burglary tool, and possession of a firearm by a felon. He was then adjudged to be an habitual criminal under Nebraska Revised Statutes, § 29–2221 (R.S.Supp.1974). His appeal from this conviction was affirmed by the Supreme Court of Nebraska in *State v. Harig,* 192 Neb. 49, 218 N.W.2d 884 (1974).

Three issues are raised:

1. Denial under the Sixth Amendment of a right to a speedy trial;

2. Denial under the Fourth Amendment of a right to be free from unlawful searches and seizures; and

3. Denial under the Sixth Amendment of a right to the assistance of counsel in a 1963 conviction which was used as a conviction necessary to support his habitual criminal adjudication.

At the evidentiary hearing held on January 14, 1976, the petitioner sought to introduce evidence on the first and third issues. The respondent objected, arguing that the petitioner had received a full, fair and adequate hearing in the state courts of Nebraska on all issues raised. I conditionally heard the evidence of the petitioner, subject to a later ruling on the fairness and adequacy of the previous state court hearing.

■ Prior to 1963, the controlling precedent was *Brown v. Allen,* 344 U.S. 443, 463, 73 S.Ct. 397, 410, 97 L.Ed. 469, 492 (1953). The rule was established there that an evidentiary hearing in a habeas corpus suit would be held solely at the discretion of the trial judge and that this discretion was to be exercised only in unusual circumstances. *Brown* was overruled by *Townsend v. Sain,* 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963). The court stated the applicable policy considerations as follows:

"It is the typical, not the rare, case in which constitutional claims turn upon a resolution of contested factual issues. Thus a narrow view of the hearing power

would totally subvert Congress' specific aim in passing the Act of February 5, 1867, of affording state prisoners a forum in the federal trial courts for the determination of claims of detention in violation of the Constitution. The language of Congress, the history of the writ, the decisions of this Court, all make clear that the power of inquiry on federal habeas corpus is plenary.

.    .    .    .    .

" .    .    . Where the facts are in dispute, the federal court in habeas corpus must hold an evidentiary hearing if the habeas applicant did not receive a full and fair evidentiary hearing in a state court, either at the time of the trial or in a collateral proceeding. . . ." 372 U.S. at 312, 83 S.Ct. at 756, 9 L.Ed.2d at 785.

*Townsend* then states six circumstances in which the holding of an evidentiary hearing is mandatory:

(1) If the merits of the factual dispute were not resolved in the state hearing;

(2) If the state factual determination is not fairly supported by the record as a whole;

(3) If the fact-finding procedure employed by the state court was not adequate to afford a full and fair hearing;

(4) If there is a substantial allegation of newly discovered evidence;

(5) If the material facts were not adequately developed at the state court hearing; or

(6) If for any reason it appears that the state trier of fact did not afford the habeas applicant a full and fair fact hearing.

Beyond this, the district judge may hold an evidentiary hearing in any case in which the material facts are in dispute, "constrained only by his sound discretion." *Townsend v. Sain,* 372 U.S. at 318, 83 S.Ct. at 760, 9 L.Ed.2d at 789.

■ As to the speedy trial issue, it appears that no evidentiary hearing has ever

been conducted by the state courts of Nebraska. The state courts apparently saw no reason to do so because of the various statements of the petitioner that he was waiving such rights. The fifth standard of *Townsend,* that the material facts were not adequately developed at the state court hearing, is applicable. The evidence offered by the petitioner in support of this issue at the evidentiary hearing of January 14, 1976, is received and considered.

■ The right to counsel at the 1963 proceeding is on a different footing, however. A hearing was held in the District Court of Lancaster County on June 21, 1973, as to whether the petitioner should be adjudged an habitual criminal. The petitioner testified fully at that time on the issue of his representation by counsel at the 1963 proceeding. No indication is given why the petitioner does not view that hearing as a full and fair hearing. None of the criteria of *Townsend* that would require the convening of an evidentiary hearing are present. Furthermore, I see no reason to exercise my discretion to consider such further evidence. His testimony now relates to precisely the same subject matter to which his testimony in state court on June 12, 1973, was directed and I have no reason to think that his testimony on this issue now would be any more reliable than it was at the state court hearing. Thus, any evidence on this issue received at the January 14, 1976, evidentiary hearing will be disregarded.

## I. SPEEDY TRIAL

■ The respondent asserts that the petitioner has specifically waived his right to a speedy trial. *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), examines and rejects the "demand-waiver rule," i. e., that a defendant who does not demand a speedy trial therefore waives his right thereto. Instead, the defendant's demand is to be weighed as one of the factors in an inquiry into the deprivation of the right to a speedy trial. However, *Barker* did not preclude a defendant's

waiver of this right. Waiver is to be judged here just as it is for other fundamental constitutional rights; the prosecution must show that the claimed waiver was knowingly and voluntarily made. *Barker* summarizes the rule on waiver of constitutional rights thus:

" . . . The Court has defined waiver as 'an intentional relinquishment or abandonment of a known right or privilege.' . . . Courts should 'indulge every reasonable presumption against waiver,' . . . and they should 'not presume acquiescence in the loss of fundamental rights,' . . . " 407 U.S. at 525–526, 92 S.Ct. at 2189, 33 L.Ed.2d at 114.

■ There is substantial evidence in the record of this waiver. The transcript of the April 3, 1973, proceeding in the District Court of Lancaster County reveals the following exchange:

"COURT: What do you want to do, Mr. Harig? Do you want to retain Mr. Swihart and get your case tried at this next jury or do you want to change counsel and have the probability it may go over? DEFENDANT: Well, I would like to keep him but I haven't the funds to keep Mr. Swihart. He is an excellent lawyer and I would like to stay with him. He is familiar with my case; but like I say, I have no funds. If it goes to the Public Defender I will not take one."

A journal entry was made in the District Court of Lancaster County on April 13, 1973, stating:

"Defendant waives his right to speedy trial and states he has no objection to case being tried to the May or September jury terms."

The accompanying transcript for that day reflects the following exchanges:

"THE COURT: . . . You realize that, I don't know if Mr. Swihart has explained it to you, but I'm sure he has, the constitution guarantees you the right to a speedy trial, and this is the thing we're concerned about. MR. HARIG: Yes. THE COURT: We're not trying to run you through anything; we are simply—

by the mechanism under which we operate, we are trying to afford you your constitutional right to have a speedy trial; and this is the reason we are concerned about Mr. Swihart getting out, and continually putting the matter off and off and off. So, do I understand that, here again, even though you may have waived it before, you are perfectly willing to waive your right to a speedy trial and put the matter off another month? MR. HARIG: Yes, sir.

\* \* \* \* \* \*

"MR. LAHNERS: Then we have a further problem. He's assuming he's going to go to trial in May, at the next jury panel; and if he doesn't go to trial in May, then he sits in jail until September. I can't guarantee him a trial _ _ _ MR. HARIG: Who is assuming? MR. LAHNERS: I think you're assuming. MR. HARIG: I don't assume nothing. MR. LAHNERS: You're willing to wait to September to go to trial? MR. HARIG: If necessary. MR. LAHNERS: That presents a legal problem. MR. HARIG: I'm not in a big hurry. THE COURT: Go ahead, Mr. Lahners. MR. LAHNERS: That produces a legal problem, too, in case there's any of our witnesses that are unavailable and he's demanding his right to a speedy trial and then having to wait four months, to September, to get a trial, then we're going to be at fault, and then the claim is going to be made MR. HARIG: I'll release you of that. MR. LAHNERS: _ _ _ that he didn't get a speedy trial. MR. HARIG: You won't be at fault. I'll release you of that. MR. LAHNERS: That's a legal question. MR. HARIG: It's in front of the Judge. MR. LAHNERS: That doesn't make any difference."

The record is clear that the petitioner knew of his right to a speedy trial. His

original plea in abatement filed in the County Court of Lancaster County had raised the issue for the first time; that was withdrawn two days after it was filed. Furthermore, he was accompanied by counsel every time he mentioned waiver in the courtroom. It also appears that his relinquishment of his right to a speedy trial was intentional. In testimony before this court the petitioner admitted that he had once said to Judge Samuel Van Pelt that he waived his right to a speedy trial and that Judge Van Pelt then told the prosecutor that he would be relieved of any obligation to furnish the petitioner a speedy trial. The petitioner by his waiver was seeking to have Mr. Swihart appointed as his counsel.

I therefore find, on the basis of the records before me, that the petitioner intelligently and knowingly waived his right to a speedy trial. He cannot now complain as to that which he has already waived.

Even were I to hold otherwise, the petitioner does not present facts sufficient to support his speedy trial claim on the merits. Of the four factors that *Barker* requires to be balanced in each case, only the fourth—prejudice to the defendant—can be considered to be in the defendant's favor. The length of the delay is only six months. The reason for the delay can largely be placed upon the petitioner or his counsel. That the petitioner might not have personally participated in these various motions for continuance in the county court does not mean that the blame for the delay can be shifted to the court or the prosecutor. The petitioner is bound by the actions of his counsel. Furthermore, the defendant's shifting of defense counsel from the public defender's office to Mr. Swihart and then back to the public defender's office was a direct cause of much of this delay. Likewise, there has been no assertion of the right by the defendant. The only attempt at such was in his plea in abatement, which was withdrawn two days after it was filed.

Under such circumstances, the petitioner's claim that he has been denied a speedy trial is without merit.

## II. ILLEGAL SEARCH AND SEIZURE

The second allegation is that the petitioner's automobile was illegally searched and certain items were illegally seized from it. The items seized were two hand guns and a crowbar, all found under the front seat. The principal issue in this proceeding is whether the petitioner gave consent to this search. Testimony on this issue came from only two sources: the petitioner, who stated that Officer Addison stopped him, ordered him out of the car, searched the car and found the guns, and then asked the petitioner if he could search the car; and Officer Addison, who stated that he stopped the car, asked for and received permission to search the car, and then did so and discovered the guns. The petitioner's codefendant was an occupant of the car at the time the vehicle was stopped; he testified that Officer Addison first asked him for permission to shake down the car and he replied that it was not his car so he could not say yes or no; he states he did not hear any further conversation. A reasonable inference from this is that Officer Addison at least asked the petitioner for permission to search prior to doing so. Officer Addison was accompanied by Officer Young in his patrol car, but Officer Young did not hear any of the conversations.

The Supreme Court of Nebraska in *State v. Harig* found as follows at 192 Neb. 52, 218 N.W.2d 887:

> "Obviously the evidence on this point was conflicting. In such situation, the decision upon the motion to suppress is for the court, and will not be reversed on appeal in the absence of an abuse of discretion."

The trial court had overruled the petitioner's motion to suppress and although it failed to make specific findings of fact, it is clear from the record that the ground argued by the petitioner for suppression was his lack of consent.

Under 28 U.S.C. § 2254, I am precluded from questioning this finding of fact, absent one of the eight exceptions listed therein. None of the exceptions is

applicable here and thus the state trial court's determination to believe Officer Addison must be followed by this court. That does not end the matter, however. There is still the legal question of whether Officer Addison's testimony, taken as true, is legally sufficient to justify this warrantless search. *Bumper v. North Carolina,* 391 U.S. 543, 549, 88 S.Ct. 1788, 1792, 20 L.Ed.2d 797, 802 (1968), places the burden upon the prosecutor to prove that consent was in fact freely and voluntarily given. *Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973), questioned whether the protections of the Fifth Amendment— the strict waiver requirement of *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed.2d 1461, 1466 (1939)—should apply to a determination of consent to search under the Fourth Amendment. The court specifically rejected the application of this strict waiver rule to the issue of consent in the context of Fourth Amendment searches, saying that the state must demonstrate only "that the consent was in fact voluntarily given, and not the result of duress or coercion, express or implied."

██ Under the version of the evidence which I must accept, the state has met that burden. There is no indication that the petitioner was faced with any coercion or duress.

## III. ASSISTANCE OF COUNSEL

At no time during the 1963 criminal proceedings against the petitioner did he have the assistance of counsel. He does not dispute, however, that he made a knowing and intelligent waiver of this right at his arraignment in the District Court of Lancaster County, wherein he pleaded guilty. He does, however, challenge the finding that this waiver at arraignment operated as a continuing waiver, effective as such at his sentencing. The Supreme Court of Nebraska found:

" . . . [A]t the time of sentencing thereon, the defendant, appearing without counsel, was not informed that counsel would be appointed for him if he could

not afford to retain counsel of his own." 192 Neb. at 58, 218 N.W.2d at 890

The attack on the 1963 conviction is based upon *Burgett v. Texas,* 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319 (1967), wherein the court makes clear that if a conviction is obtained in violation of *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1965), the conviction cannot be used either to support guilt or enhance punishment. The inquiry here is whether the petitioner's right to counsel at a state sentencing hearing (see *Mempa v. Rhay,* 389 U.S. 128, 88 S.Ct. 254, 19 L.Ed.2d 336 (1967)) has been violated. If so, then that conviction cannot be used to support the habitual criminal adjudication.

The Eighth Circuit Court of Appeals faced the same issue in the context of a § 2255 proceeding in *Davis v. United States,* 226 F.2d 834 (C.A.8th Cir. 1955). There, the petitioner had waived counsel and pleaded guilty on June 3, 1935; at his sentencing proceeding on June 7, 1935, no further inquiry was made as to the petitioner's desire to continue to waive counsel. The court said:

" . . . If that waiver was made competently, intelligently and with the full understanding of his rights, we can see no reason why the court at each subsequent proceedings should go through the mere ceremony of again inquiring if the defendant knew his rights and was then again willing to waive them.

"The evidence discloses and Judge Nordbye has found that on June 3, 1935, Davis was apprised of his constitutional rights and competently, intelligently and understandingly waived such rights. It would be straining human credulity to say that he did not possess the same knowledge and intelligence four days later on June 7th. The sentencing of Davis on June 7th was but an extension of the arraignment proceedings. It could have followed immediately and no question could have been raised as to its propriety. Undoubtedly the trial judge, in deferring sentence until June 7th, did so in order that he could receive a pre-sentence re-

port from the probation officer. The fact that the sentencing took place four days after the arraignment could create a need for further inquiry only if something transpired in the interim which justified such further inquiry, such as a request by Davis for counsel and advice when he appeared for sentencing. Davis made no request and made no statement, and accordingly Judge Joyce was entirely justified in taking his prior refusal of counsel as 'definite'. There was indeed an implied waiver of counsel as to any proceedings subsequent to June 3, 1935. If this were not true, it would mean that in all criminal proceedings where the defendant competently waived the right to counsel and nothing happened in the meantime, such as an unreasonable lapse of time, newly discovered evidence which might require or justify advice of counsel, new charges brought, a request from the defendant, or similar circumstances, he would nevertheless have to be interrogated in the same fashion in each subsequent step therein. That would be neither good law nor good sense." 226 F.2d at 840.

■ I am persuaded that this statement in *Davis* is still an accurate statement of the law as to the continuing effectiveness at sentencing of a waiver of counsel at the time the guilty plea was entered. Unless changes in conditions occur, such as are outlined in *Davis,* an original waiver is constitutionally effective at the subsequent sentencing proceedings.[1]

Other courts have struggled with this same issue and they are in agreement with *Davis.* - *White v. United States,* 354 F.2d 22 (C.A.9th Cir. 1965), a § 2255 action whose holding was reaffirmed in *White v. United States,* 450 F.2d 884 (C.A.9th Cir. 1971); *Hodge v. United States,* 414 F.2d 1040 (C.A.9th Cir. 1969) (en banc); and *Panagos v. United States,* 324 F.2d 764 (C.A.10th Cir. 1963). The case of *Schell v. United States,*

423 F.2d 101 (C.A.7th Cir. 1970), is not apposite. There, the petitioner had waived counsel and pleaded guilty at his arraignment in March, 1964. He was put on an informal probation and was not sentenced until September, 1964. At that hearing the judge merely reminded the petitioner that he had previously waived counsel at the March entry of plea. The court found that the express waiver in March should not be deemed effective in September, stating four circumstances which required that conclusion: The petitioner's youth and inexperience (he was 20 years old); the lapse of six months between the hearings; the change in posture of the case due to events in the interim (the court apparently saw two problems here, (a) that the judge's sentencing determination was made on the basis of behavior during the informal probation hearing, and (b) that the judge was now sentencing the petitioner under the Youth Corrections Act, which provided for a maximum penalty in excess of that disclosed to the petitioner at the entry of his guilty plea); and the questions raised as to the validity of the March plea (on the basis of the higher sentencing now being imposed). *Davis,* too, recognizes that under certain circumstances a waiver of counsel may not have continuing validity at sentencing.

■ There are no special circumstances in the instant case which negate the continuing validity of the waiver. Here, the sentencing took place only two days after the waiver of counsel and entry of plea. Neither the transcript nor the petitioner's testimony discloses any circumstances which would question the continuing validity of the waiver or even the simple desire of the petitioner to change the waiver. I do not read *Mempa* as requiring that in all cases a defendant who waives the assistance of counsel at the time he pleads guilty must make a new and complete waiver before sentencing can proceed. Each case must stand on its own merits. I find that the

---

1. Although not constitutionally required, the better practice appears to be that the offer of counsel should be renewed at each subsequent stage of the proceedings. See American Bar Association Project on Minimum Standards for Criminal Justice—Providing Defense Services, § 7.3 (approved draft, 1968).

petitioner has not been denied his right to counsel.

The petitioner also alleges that he was not informed of his right to counsel at the preliminary hearing in 1963 in the County Court of Lancaster County. This issue was not raised by the petitioner in his original complaint or at the pretrial conference; it was first raised in the petitioner's brief and oral argument on January 14, 1976, and in the amended petition of the petitioner filed on January 14, 1976. An examination of the opinion of the Supreme Court of Nebraska in *State v. Harig,* supra, and an examination of the petitioner's brief before the Supreme Court of Nebraska in that case, reveals that this issue has not been presented to the Supreme Court of Nebraska for review. Accordingly, I find that it has not been exhausted within the meaning of 28 U.S.C. § 2254(b) and (c) and cannot now be considered by this court.