THE STATE v. JOSEPH P. HELD, Appellant.—148 S. W. (2d) 508.

Division Two, March 12, 1941.

*Robert L. Spelbrink* and *William H. Corcoran, Jr.*, for appellant.

*Roy McKittrick*, Attorney General, and *Arthur O'Keefe*, Assistant Attorney General, for respondent.

510

COOLEY, C.—Defendant was convicted in the Circuit Court of Franklin County of robbery in the first degree, sentenced to thirty-five years' imprisonment in the penitentiary and has appealed. We have in fact only the record proper before us for review, because:

Appellant has attempted to perfect and present his appeal by filing here what he terms an "abstract of the record," as in a civil case. Appeals in criminal cases are not perfected in that way, but by filing in the appellate court a complete transcript of the record. [See Sec. 3756, R. S. 1929, Mo. Stat. Ann., p. 3292, Sec. 3757, R. S. 1929, Mo. Stat. Ann., p. 3295, and cases cited in notes in Mo. Stat. Ann. Consult also, State v. Hall, 312 Mo. 427, 279 S. W. 103, 109 [12]; State v. Ragg, 337 Mo. 436, 84 S. W. (2d) 911.] But even if this requirement for the filing of a complete transcript, including a certified copy of the bill of exceptions, could be waived, it would not help appellant. In his "abstract of record" there is no showing that a bill of exceptions was allowed or *signed* and filed or ordered filed by the trial court or judge. There is this, and only this:

"BILL OF EXCEPTIONS FILED.

"Inasmuch as the foregoing evidence, proceedings, matters, things, ruling and exceptions do not appear of record, and in order that the same may be made a part of the record in this cause, so as to be presented to the Supreme Court of Missouri, defendant here now presents to the Court this, his Bill of Exceptions, and prays that the same may be settled and allowed, approved, signed, sealed and filed and ordered made a part of the record in this cause, all of which is accordingly done on this — day of November, 1940.

"Judge of the Circuit Court of
Franklin County, State of Missouri.

"Approved:
        "Robert L. Spelbrink,
        "William H. Corcoran, Jr.,
            "Attorneys for Defendant.

_____

_____

        "Attorneys for the State."

The purported bill of exceptions is not a bill of exceptions, because as shown by appellant's abstract, it was not signed by the trial judge. It was not even approved or agreed to by the State's counsel. That a bill of exceptions, in order to become part of the record and preserve for review matters of exception preservable only by bill of exceptions, must be allowed and signed by the trial judge and filed pursuant to proper order is too well settled in this State to require citation of authorities. The learned Assistant Attorney General, who briefed the case here for the State, says there was no bill of exceptions filed, so that there is for consideration only the record proper. He does not elaborate the statement but doubtless had in mind the facts we have just pointed out.

It seems to be conceded, however, that there is enough here to present for review the record proper. The State so briefs and presents the case and we shall so consider it. Indeed, appellant's main contention, the only one briefed by him that could in any event, so far as appears from his abstract, even if he had here a properly signed and certified bill of exceptions, call for serious consideration, arises upon the record proper. So far as concerns the evidence, as abstracted, there can be no question but that it is sufficient to sustain the verdict. But since it is not properly preserved and presented to us for review we shall not take space to recapitulate it.

Going then to the record proper.

The information, omitting caption, signature and verification, charges:

"There comes now Theodore P. Hukriede, Prosecuting Attorney, within and for the County of Franklin, upon his official oath and his hereto appended oath, informs the court as follows: that Pete Held, alias Joe Held, on the 28th day of April, 1930, at Belleville, St. Clair County, Illinois, in the Circuit Court of such county was duly convicted of the crime of robbery and in accordance with such conviction was duly sentenced by said court to an imprisonment in the penitentiary of the said State of Illinois and that thereafter, to-wit:

"On the 16th day of January, 1939, at and in the County of Franklin and State of Missouri the said Pete Held, alias Joe Held, unlawfully and feloniously with force and arms by means of a dangerous and deadly weapon, to-wit: An automatic pistol make an

assault upon one Jack Calvert; and by putting him in fear of some immediate injury to his person in his presence and against the will of the said Jack Calvert did rob, steal, take and carry away, with the felonious intent to permanently deprive the owner of the use thereof certain alcoholic liquors of the value of Seven Hundred ($700.00) Dollars, the property of the said Jack Calvert contrary to the form of the Statutes in such cases made and provided and against the Peace and Dignity of the State.''

Appellant's contention is that the information is drawn under Sections 4461 and 4462, R. S. 1929, Mo. Stat. Ann., pp. 3063, 3066, frequently referred to as the ''habitual criminal'' law, and that it is fatally defective because it does not allege his discharge from the prior conviction before the alleged commission of the offense for which he was on trial. There are some other, but minor, objections to the sufficiency of the charge relative to prior conviction. Appellant cites and relies upon State v. Christup, 337 Mo. 776, 85 S. W. (2d) 1024.

In the Christup case the information charged first degree robbery, as here, and, as the opinion states, his previous conviction of an aggravated robbery was alleged *as a basis for additional punishment* (Italics ours) ''under what is commonly known as the Habitual Criminal Act.'' He was convicted and his punishment was assessed at life imprisonment, the punishment mandatorily required by said act *if* the defendant was found guilty of the offense charged *and* of a prior conviction as specified in that act. But the court pointed out that the statutes in question provided that such additional punishment was to be inflicted only if the subsequent offense was committed after the prior conviction and compliance with the sentence then imposed and lawful discharge therefrom. In that case the defendant had not served his sentence, had not been lawfully discharged, but had escaped from prison. This was held not to bring the case within the provisions of the ''Habitual Criminal Act,'' and it was held, therefore, that the information was insufficient. It is to be noted, however, that the court did not reverse the case outright but reversed and remanded it. It is to be noted, further, that the court did not, in its opinion, quote the verdict,—merely said that the defendant was sentenced to life imprisonment. Reference to our files in that case shows the verdict was: ''We, the jury, . . . find the defendant guilty of robbery in the first degree by means of a dangerous and deadly weapon *and one prior conviction,* as charged in the information, and assess the punishment at imprisonment in the penitentiary for the remainder of his natural life.'' (Italics ours.) The files further show that by its instructions the trial court did not leave it to the jury to assess a lesser punishment than life imprisonment if they found the defendant guilty of the offense charged and that he had previously been convicted and sentenced in Colorado and *had escaped*

after serving part of his sentence but that in such case the punishment assessed must be life imprisonment. The court, in the Christup case, was writing upon the facts and the record there presented, and holding, as it did—and as prior decisions cited had held—that the "Habitual Criminal Act" only subjected the accused to the extreme penalty therein declared, if the second offense occurred after pardon or lawful discharge from the previous sentence, it necessarily held the information insufficient. But the court did not hold that the information was insufficient to charge first degree robbery *without* a prior conviction. That question was not discussed and on the record then before the court did not need to be discussed. The decision does not call for modification (as the State insists we should do) in the instant case.

We may concede that the information herein is insufficient to charge prior conviction under the "Habitual Criminal Act" so as to subject the accused to the extreme penalty thereby imposed, because, if for no other reason, it does not allege his compliance with and lawful discharge from the sentence alleged to have been then imposed. [Christup case, supra.] But, omitting that allegation, it does charge robbery in the first degree, and that was *the offense—the crime—*for which defendant was being tried. The verdict in this case was (omitting caption and signature), "We, the jury, find the defendant guilty as charged and assess his punishment at 35 years in the penitentiary." Under Sec. 4061, R. S. 1929, Mo. Stat. Ann., p. 2863, the punishment for robbery in the first degree, by means of a dangerous and deadly weapon, is fixed at not less than ten years' imprisonment and may extend to life imprisonment or to a death sentence, and if such offense be committed by any other means the offender shall be punished by not less than five years' imprisonment in the penitentiary, with no maximum fixed. By Sec. 4461, the "Habitual Criminal" statute, it is provided:

"If any person convicted of any offense punishable by imprisonment in the penitentiary, or of any attempt to commit an offense which, if perpetrated, would be punishable by imprisonment in the penitentiary, shall be discharged, either upon pardon or upon compliance with the sentence, and shall subsequently be convicted of any offense committed after such pardon or discharge, he shall be punished as follows: First, if such subsequent offense be such that, upon a first conviction, the offender would be punishable by imprisonment in the penitentiary for life, or for a term which under the provisions of this law might extend to imprisonment for life, then such person shall be punished by imprisonment in the penitentiary for life; . . ."

It is apparent that defendant was not convicted under the "Habitual Criminal Act" because, had he been, the sentence must have been life imprisonment and the jury did not assess that punishment. The jury evidently disregarded the alleged prior conviction.

In State v. Peterson (Mo.), 130 S. W. (2d) 505, the defendant was charged with first degree robbery by means of a dangerous and deadly weapon. He was convicted and sentenced to ten years' imprisonment, which judgment we affirmed. The information contained a charge of prior conviction. He said, "The jury, however, disregarded that phase of the case, but found appellant guilty on the charge of robbery and assessed the minimum punishment." We also said that all of the points made concerning the defendant's discharge were moot because the jury had found in the appellant's favor on those points and had assessed the minimum punishment, "indicating that the jury disregarded the previous conviction of appellant."

In State v. Sumpter, 335 Mo. 620, 73 S. W. (2d) 760, the defendant was charged with felonious assault, the maximum punishment for which was seven years' imprisonment, if for a first offense. The jury assessed the punishment as seven years' imprisonment. The trial court rejected the verdict, at least so this court said, as to the punishment, and sentenced the defendant to life imprisonment because, it appeared, the information was drawn under the "Habitual Criminal Act," (Sec. 4461, supra). This court held that the information was fatally defective with respect to the "essential" allegation as to former conviction *and discharge,* and that the trial court had erred in imposing a sentence of life imprisonment. But, note, the verdict in that case read:

" 'We, the jury, find the defendant guilty as charged in the information and assess his punishment at imprisonment in the state penitentiary for a term of seven years.

"W. L. Nelson, Foreman.' "

The case was here on the record proper. We held that the trial court's "rejection" of the verdict, as shown by the record, meant that such court had rejected the verdict only as to the punishment assessed. We said "The only crime charged in the information was the crime of assault with intent to kill, for which the defendant was on trial; the allegations concerning the former conviction were not, themselves, a charge of crime, but were inserted only as bearing on the punishment to be assessed for the assault charged." [335 Mo. 620, 73 S. W. (2d) 762.]

The question is further discussed in the Sumpter case and authorities are cited. The ultimate conclusion of the court was that the judgment of life imprisonment could not stand because the prior conviction and discharge had not been sufficiently pleaded, but that the verdict of guilty and assessment of punishment as for a first offense could stand, and this court, under other statutory provisions, pronounced judgment in accordance with the verdict. That could only have been done by recognizing that the information, though "fatally defective" as charging a prior conviction and discharge under the "Habitual Criminal Act," was yet good as charging *the*

*crime* for which the defendant was on trial; and that is the reasonable construction of said act. The "Habitual Criminal Act" was not designed to make a prior conviction a substantive part of an offense subsequently committed. It was designed to go and does go only to the *punishment* for the subsequent offense, if committed, as is forcibly and cogently pointed out in the Sumpter case. The Sumpter case is cited, with apparent approval, in State v. Christup, supra. In State v. Bagby, 338 Mo. 951, 93 S. W. (2d) 241, 250 [23], we again said, citing State v. Sumpter, supra, that "the allegations in the information concerning the former conviction were not themselves a charge of crime, but went only to the punishment to be assessed for the robbery charged."

It thus appears that in several recent decisions this court has recognized that although an information purports to have been drawn under the "Habitual Criminal Act" and is insufficient to authorize imposition of the extreme penalty therein provided it may yet be good as charging *the offense* for which the accused is on trial. And that is the situation we have before us in the instant case. Whether we regard the information as charging robbery in the first degree by means of a dangerous and deadly weapon (which we are inclined to think it does)—or only robbery in the first degree without the use of such weapon, the punishment may extend to life imprisonment, because, even in the latter case the statute fixes a minimum punishment of imprisonment in the penitentiary but no maximum, so that for a first offense the punishment *might* extend to life imprisonment and, therefore, under Sec. 4461, supra, if defendant had been found guilty of the offense charged and of a prior conviction, his punishment must have been assessed at life imprisonment, assuming that the jury had been properly instructed. For discussion of this proposition see Sumpter case, supra. The jury evidently disregarded this phase of the case, as it might do. [Peterson case, supra.] The Christup case, properly read and interpreted in the light of the facts there in issue, does not conflict with the other cases we have referred to. Defendant was accorded allocution and was duly sentenced in accordance with the verdict. We find no reversible error in the record presented. The judgment should be affirmed. It is so ordered. *Westhues* and *Bohling, CC.*, concur.

PER CURIAM:—The foregoing opinion by COOLEY, C., is adopted as the opinion of the court. All the judges concur.