STATE OF NEBRASKA, APPELLEE, v. ROBERT A. HARIG, APPELLANT.

218 N. W. 2d 884

Filed June 6, 1974. No. 39223.

T. Clement Gaughan and Richard L. Goos, for appellant.

Clarence A. H. Meyer, Attorney General, Warren D. Lichty, Jr., and Robert G. Avey, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, MCCOWN, NEWTON, CLINTON, and BRODKEY, JJ.

BRODKEY, J.

In a multicount information, defendant was respectively charged with: (1) Burglary; (2) unlawful possession of a burglary tool; and (3) possession of a firearm by a felon. In addition, the State charged the defendant with being an habitual criminal. After trial, the defend-

ant was found guilty upon each count; and a separate hearing was thereafter held with respect to the habitual criminal charge under section 29-2221, R. S. Supp., 1972. The court found the defendant to be an habitual criminal and thereupon proceeded to sentence him to a term of not less than 15 nor more than 20 years on each of the three felonies, said sentences to run concurrently. Defendant appeals those convictions and sentences to this court. We affirm.

By way of general factual background for the incidents involved in this case, it appears that at or about 2:30 a.m. on November 12, 1972, a Lincoln, Nebraska, police department helicopter pilot was informed by police radio of an ADT alarm at the Western Gun and Supply Company. The helicopter arrived over the premises of Western Gun about 20 seconds later and observed a "station wagon type" vehicle sitting at the southeast corner of the building. As the helicopter approached, the automobile drove away, the pilot observing that its right rear taillight was out and that there appeared to be some plastic coverings on the rear of the vehicle. The helicopter pilot kept the vehicle in his observation at all times, and radioed directions for a police car to intercept the station wagon. The station wagon was stopped by the police vehicle, and the defendant and one Martyn Youngstrom were found to be occupants in the station wagon. Although the testimony was conflicting as to whether the driver of the automobile consented to a search of his vehicle, it is clear that a search was made, which yielded two hand guns and a crowbar. Defendant was subsequently arrested, charged, tried, and sentenced, as set out above. Additional facts of this case will be discussed under the particular assignments of error hereinafter set out.

Among the many errors assigned by defendant is that the trial court erred in overruling his motion to suppress certain evidence of the State. Defendant asserts that no permission was obtained from him by the police before

they searched his automobile and obtained the guns and crowbar previously referred to. There was, however, testimony by one of the arresting officers to the effect that the defendant did give consent to the search of his automobile. Obviously the evidence on this point was conflicting. In such situation, the decision upon the motion to suppress is for the court, and will not be reversed on appeal in the absence of an abuse of discretion. State v. Batchelor, 191 Neb. 148, 214 N. W. 2d 276 (1974). There having been no showing of an abuse of discretion, we hold that no error was committed in that regard.

The defendant asserts that the evidence in this case is insufficient to support the verdict of guilt on each of the three felonies involved. It is clear from the record that there was more than sufficient evidence to submit to the jury for its determination of guilt on the charges of possession of a burglary tool and also upon the charge of possession of a firearm. No further discussion is necessary with reference to those two charges.

We shall, however, discuss the claim of the defendant that the evidence was insufficient with respect to the charge of burglary, particularly with respect to defendant's claim that there was no evidence of an entry by the defendant into the building in question. We add, in passing, that the evidence is clear there was an unlawful breaking of the building, by virtue of the testimony of presence of jimmy marks on a door at the premises; and also the testimony of an FBI agent who examined the crowbar obtained as evidence and testified as to the kind and size of the marks, and also with respect to the paint samples which were taken from the door in question. This evidence as to the breaking was submitted to the jury under proper instructions, and its verdict necessarily reflects its conclusion that there was breaking in this case. Defendant does not seriously attack this conclusion in his brief. Turning to the question as to the sufficiency of evidence to show that defendant in fact did enter the Western Gun and Supply

Company building, the witness, Donald Nielsen, an employee of Notifier Corporation which installed the burglar alarm or security system in the Western Gun and Supply Company building, testified that there were two types of alarm systems in the building, one being a perimeter system having contacts with the doors of the building, and the other being a space type system, designed to detect movements within the building. He testified that if the door had somehow been by-passed as part of the perimeter system, then the only way to trigger the alarm would have been either by entering the area protected by the space type system or by violating another perimeter contact that had not been by-passed. Lee Mason, the assistant store manager of Western Gun, testified that he believed that on November 11, 1972, the jimmied door did not have a "hot contact" with the security alarm system, although he did admit on cross-examination that he was not absolutely certain this was true. It was the theory of the State from the testimony of these two witnesses, that defendant must have entered the building in order to trigger the alarm and therefore there was sufficient evidence of entry. The defendant argues to the contrary that the triggering of the alarm could be accounted for under the equally reasonable theory that the jimmied door had been connected with the alarm system. The rule is that after a jury has considered all the evidence and returned a verdict of guilty, that verdict may not, as a matter of law, be set aside on appeal for insufficiency of evidence, if the evidence sustains some rational theory of guilt. State v. Cano, 191 Neb. 709, 217 N. W. 2d 480 (1974); State v. Lewis, 184 Neb. 111, 165 N. W. 2d 569 (1969). In this case, the jury could have found that the alarm system of the Western Gun building could only have been triggered by someone actually entering the building. We therefore hold that there was sufficient evidence of an entry to sustain the verdict of guilt on the burglary charge.

We next turn our attention to a consideration of the errors alleged by defendant in connection with the habitual criminal proceedings following the verdicts returned by the jury and to the sentencing thereafter by the court. As previously stated, the amended information filed in this case, after setting out the three substantive offenses on which the defendant was tried in this action, also incorporated allegations to the effect that the defendant was an habitual criminal under the Nebraska Habitual Criminal Act. Particularly, it alleged that the defendant had been convicted of two prior crimes and was sentenced and committed to prison to terms of not less than 1 year on each of said crimes, all as required by the Nebraska statute. One of the prior crimes with which defendant was charged and convicted, was alleged to have occurred on April 15, 1965. At the habitual criminal hearing, following the verdict of guilty on the three counts with which the defendant was charged in this case, the evidence adduced revealed that the defendant was convicted of a crime on April 4, 1961, and not April 15, 1965. The attorney for the State thereupon moved to amend the information to conform with the evidence and alleged that the felony had occurred on April 4, 1961. Objection to the amendment was made on behalf of the defendant, but the trial court allowed it. The defendant contends that the trial court committed reversible error in permitting the amendment as to the date of one of the two prior felonies alleged in the original information. His theory was that such action constituted a violation of section 29-2221, R. S. Supp., 1972, and of Article I, section 11, of the Nebraska Constitution, and also of the Sixth Amendment to the Constitution of the United States. Section 29-2221, R. S. Supp., 1972, provides in part that: "Where punishment of an accused as an habitual criminal is sought, *the facts with reference thereto* must be charged in the indictment or information which contains the charge of the felony upon which the accused is prose-

cuted. . . . " (Emphasis supplied.) Article I, section 11, of the Nebraska Constitution, and the Sixth Amendment to the United States Constitution both guarantee an accused the right to be informed of the "nature and cause" of the accusation against him.

It must be remembered that the Habitual Criminal Act does not create a new and separate criminal offense for which a person may be separately sentenced, but provides merely that the repetition of criminal conduct aggravates the guilt and justifies greater punishment than ordinarily would be considered. State v. Tyndall, 187 Neb. 48, 187 N. W. 2d 298 (1971). Under this act, the inaccurate allegation of the date or time of a prior felony would have no effect with respect to the sufficiency of the information as to its allegation of the principal or underlying felony or felonies. As to such felonies the time of a prior conviction is only a historical fact. Jacobs v. United States, 24 F. 2d 890 (1928). It is not in any manner a part of the charge of the principal offense or offenses for which the defendant is being tried. See, Jacobs v. United States, *supra;* State v. Held, 347 Mo. 508, 148 S. W. 2d 508 (1941).

Under the Nebraska law, the essential allegations which an information must contain for a charge under the Habitual Criminal Act are that said person has been (1) twice previously convicted of a crime, (2) sentenced, and (3) committed to prison for terms not less than 1 year each. § 29-2221, R. S. Supp., 1972; Rains v. State, 142 Neb. 284, 5 N. W. 2d 887 (1942). These are "the facts with reference thereto" referred to in section 29-2221, R. S. Supp., 1972. While it is undoubtedly desirable and helpful to have the dates of the prior felonies alleged in the information charging a defendant with being an habitual criminal, we do not find that the absence of such allegation would necessarily render the information invalid. In this connection we feel it is necessary to read the provisions of the Habitual Criminal Act, section 29-2221, R. S. Supp.,

1972, with the provision of section 29-1501, R. R. S. 1943, which provides as follows: "No indictment shall be deemed invalid, nor shall the trial, judgment or other proceedings be stayed, arrested or in any manner affected . . . for omitting to state the time at which the offense was committed in any case where time is not the essence of the offense; nor for stating the time imperfectly;. . . ." We also point out in this connection that under Nebraska law, informations are generally subject to the same requirements as are indictments. See § 29-1604, R. R. S. 1943. We may, therefore, refer to the rules relating to the sufficiency of indictments in order to determine the sufficiency of the information in this case. State v. Gascoigen, 191 Neb. 15, 213 N. W. 2d 452 (1973). The exact time of the commission of the offense is not regarded as the essence of a charge, unless the statute involved makes it so, or it is clearly intended to have that effect. See Huffman v. Sigler, 352 F. 2d 370 (8th Cir., 1965). It is clear that the exact time of the commission of an alleged prior felony is not of the essence of a charge under the Habitual Criminal Act, and the failure of the information in this case to state accurately the time of a prior felony does not render that information insufficient under section 29-2221, R. S. Supp., 1972.

Defendant further contends that the insufficiency of the information, as it appeared before the amendment permitted by the court, was violative of Article I, section 11, of the Constitution of Nebraska, and also the Sixth Amendment to the Constitution of the United States. The Nebraska constitutional provision requires that an information must inform the accused with reasonable certainty of the charge against him so that he may prepare his defense thereto and be enabled to plead the judgment thereon as a bar to a later prosecution for the same offense. Moline v. State, 67 Neb. 164, 93 N. W. 228 (1903); May v. State, 153 Neb. 369, 44 N. W. 2d 636 (1950); State v. Gascoigen, *supra.* The same basic re-

quirements are imposed under the Sixth Amendment to the Constitution of the United States. Russell v. United States, 369 U. S. 749, 82 S. Ct. 1038, 8 L. Ed. 2d 240 (1962). In view of what we have previously stated, we conclude that where an information charges the applicability of the Habitual Criminal Act, the general allegation of a prior felony conviction, even without a specific allegation of the exact date or time of that prior felony, would not render the information insufficient under either of the aforesaid constitutional provisions. This is not to say that evidence need not be presented to establish the exact time or date of the prior felony or felonies generally alleged. But we see no constitutional problems in this regard so long as means are and were provided for the defendant to obtain the information relative to the specific dates of the offenses relied upon as prior felonies under the Habitual Criminal Act. We further point out in this case, and as revealed by the record, that the defendant's counsel was aware for at least 2 weeks prior to the hearing that the State was going to ask leave to amend the information as to dates involved; and the record also reveals that the trial court offered to grant a continuance to the defendant when the amendment was allowed to show a different conviction, but that counsel for the defendant said that it would not be necessary. Any possible prejudice was thereby waived. It appears that the rights of the defendant were adequately protected, that defendant was not in any manner caught by surprise by the amendment, and we feel that no error was committed by the trial court in permitting the amendment of the information to conform with the proof adduced at the hearing.

The defendant further contends that the trial court erred in considering, for the purpose of the Habitual Criminal Act, a prior conviction in which he had not been advised of his right to counsel. At the habitual criminal hearing in this case, the State introduced a record of an arraignment of the defendant on a charge

of burglary in 1963. The record showed that the defendant had waived his right to counsel at that arraignment and had entered a plea of guilty. However, at the time of sentencing thereon, the defendant, appearing without counsel, was not informed that counsel would be appointed for him if he could not afford to retain counsel of his own. Defendant made proper objections to the court's consideration of that prior conviction. State v. McGhee, 184 Neb. 352, 167 N. W. 2d 765 (1969). He points out, and correctly so, that if the sentencing in that case was not valid, then the 1963 conviction cannot be used for the purpose of enhancing punishment under the Habitual Criminal Act. Losieau v. Sigler, 406 F. 2d 795 (8th Cir., 1969), cert. den., 396 U. S. 988, 90 S. Ct. 475, 24 L. Ed. 2d 452 (1969).

The law is well settled that an accused is entitled to be represented by counsel at all "critical stages" of the proceedings against him, including the occasion upon which he is sentenced. Davis v. United States, 226 F. 2d 834 (8th Cir., 1955); Panagos v. United States, 324 F. 2d 764 (10th Cir., 1963); Mempa v. Rhay, 389 U. S. 128, 88 S. Ct. 254, 19 L. Ed. 2d 336 (1967). See, also, State v. Journey, 186 Neb. 416, 183 N. W. 2d 494 (1971). The essence of defendant's argument, however, is that his waiver of his right to counsel at his arraignment in 1963 had no effect upon the necessity to inform him of that right at the subsequent sentencing proceedings in that case; and he asserts that the court's failure to apprise him of his right to counsel at those sentencing proceedings was a violation of the Sixth Amendment to the United States Constitution. In support of his position he calls attention to Standard 7.3 of the A B A Minimum Standards for Criminal Justice, Standards Relating to Providing Defense Services. This Standard provides in part that: "If a waiver [of counsel] is accepted, the offer should be renewed at each subsequent stage of the proceedings at which the defendant appears without counsel." It is our opinion that such a practice by

the trial courts of this State would be commendable, but we point out that this particular Standard has not been officially adopted by this court, and at this time is not legally required. It has been held that under the Sixth Amendment to the United States Constitution, if a waiver of the right to counsel has been properly made at the arraignment at which a plea of guilty was entered, the trial court is not required at the subsequent sentencing proceeding to again apprise the defendant of his right to counsel, so long as nothing has intervened between the arraignment and the sentencing that should cause the waiver at the arraignment to be ineffective for the purposes of the sentencing proceeding. Davis v. United States, *supra*; Panagos v. United States, *supra*. In Davis, the court stated: "If this were not true, it would mean that in all criminal proceedings where the defendant competently waived the right to counsel and nothing happened in the meantime, such as an unreasonable lapse of time, newly discovered evidence which might require or justify advice of counsel, new charges brought, a request from the defendant, or similar circumstances, he would nevertheless have to be interrogated in the same fashion on each subsequent step therein. That would be neither good law nor good sense." In short, although it may be good practice for the trial court to renew the offer of counsel at the sentencing stage of the proceedings when the defendant appears without counsel, such a renewal is not necessarily required under the Sixth Amendment to be made in every case. None of the intervening elements referred to in the Davis case appear in this case. We must therefore hold that the failure to apprise the defendant of his right to counsel at the 1963 sentencing proceedings did not violate the Sixth Amendment, and did not render the 1963 conviction invalid for the purposes of the Habitual Criminal Act. The 1963 conviction and sentencing of the defendant being valid,

the trial court did not commit error in considering it for the purpose of enhancing the defendant's sentence under section 29-2221, R. S. Supp., 1972.

The defendant also complains of the nature of the sentences entered by the court in this case. As previously stated the court sentenced the defendant to a term of not less than 15 nor more than 20 years on each of the 3 felonies for which he was convicted, the sentences to run concurrently. Defendant contends that such a sentence is not authorized under the Habitual Criminal Act. Section 29-2221, R. S. Supp., 1972, provides in part: "Whoever has been twice convicted of crime, sentenced and committed to prison . . . for terms of not less than one year each, shall, upon conviction of a felony . . . be deemed to be an habitual criminal, and shall be punished by imprisonment . . . for a term of not less than ten or more than sixty years . . . ."

Defendant argues that this section does not authorize punishment from 10 to 60 years for each felony count alleged in the information. In support of this contention he cites State v. Gaston, 191 Neb. 121, 214 N. W. 2d 376 (1974), wherein it is stated that the Habitual Criminal Act provides for one single sentence on the principal charge and mandatorily requires that single sentence to be for a period of from 10 to 60 years. The rule set forth in State v. Gaston, *supra*, however, has nothing to do with the case now before us. Gaston stands for the principle that one may not be separately sentenced for the underlying felony conviction and also sentenced under the Habitual Criminal Act. The only sentence which may be imposed upon conviction of a felony is the enhanced sentence under section 29-2221, R. S. Supp., 1972. In this case, we have three separate sentences based upon three separate felonies, each sentence being enhanced under the Habitual Criminal Act. Such a circumstance is not unique in Nebraska law. See, for example, Kitts v. State, 153 Neb. 784, 46 N. W.

2d 158 (1951). The fallacy of defendant's position in this regard is made clear when it is considered that a defendant may, and frequently is, sentenced on more than one occasion under the Habitual Criminal Act. If the separate offenses and convictions involved had occurred on successive dates, rather than all on the same date, it would be very clear that the defendant could have been sentenced as an habitual criminal for each of the consecutive crimes for which he was convicted. We hold that where a defendant is simultaneously convicted of more than one felony charged on the same information and the Habitual Criminal Act is applicable, such defendant may be sentenced separately for each underlying conviction, each sentence being enchanced under the Habitual Criminal Act. The sentencing of the defendant herein is consistent with such rule and must stand.

The defendant also contends that the sentence imposed upon him by the trial court was excessive. While it is true that the trial court imposed separate sentences under the Habitual Criminal Act for each of the three felonies for which he was convicted, the trial court specifically provided that the sentences were to run concurrently, and therefore, for all practical purposes, he received one sentence for the three offenses so far as the maximum possible term of confinement is concerned. We have repeatedly ruled that where the punishment of an offense created by statute is left to the discretion of the court, to be exercised within certain prescribed limits, a sentence imposed within such limits will not be disturbed on appeal unless there appears to be an abuse of discretion. State v. Cano, 191 Neb. 709, 217 N. W. 2d 480 (1974); State v. Brown, 191 Neb. 61, 213 N. W. 2d 712 (1974); State v. McCowin, 191 Neb. 31, 213 N. W. 2d 724 (1973). Here, the sentence imposed was clearly within the statutory limits established by section 29-2221, R. S. Supp., 1972. After

having carefully reviewed the record, including a presentence report revealing a rather lengthy criminal record, we have determined that the trial court did not abuse its discretion in the sentence it imposed upon the defendant, and that such sentence must stand.

Defendant has also assigned certain other alleged errors in connection with this appeal. We believe these assignments to be without merit, but will comment on them briefly. Defendant contends his right to a speedy trial was denied in that there was excessive delay between the time the information was filed and the time that the preliminary hearing was held. The record discloses that the delay complained of was caused by defendant's court-appointed counsel with defendant's acquiescence and consent to continuances causing such delay. Defendant has no cause to complain in this regard.

Defendant also assigns as error the failure of the trial court to grant certain continuances requested by him. This court has previously ruled that the matter of the granting of a continuance in a criminal case is particularly within the province and the discretionary judgment of the trial court. State v. Coleman, 190 Neb. 441, 208 N. W. 2d 690 (1973). There was no abuse of discretion involved herein.

Defendant also asserts that the trial court erred in failing to reduce the amount of pretrial bail and argues that the amount of bail set in the sum of $8,000 was excessive and in violation of the Constitution of the United States and Article I, section 9, of the Constitution of the State of Nebraska. The issue of excessiveness of pretrial bail is not reviewable after a conviction and sentence. State v. Watkins, 190 Neb. 450, 209 N. W. 2d 184 (1973). The appropriate form of relief from denial of a motion to reduce bail claimed to be excessive is by habeas corpus. See, § 29-2806, R. R. S.

1943; Kennedy v. Corrigan, 169 Neb. 586, 100 N. W. 2d 550 (1960).

Having considered all the assignments of error alleged by defendant, and having found none of them to be meritorious so as to entitle him to relief in his appeal to this court, we conclude that the convictions and sentences should be and hereby are affirmed.

AFFIRMED.

WHITE, C. J., not participating.