IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. KIRCHHOFF

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

MICHAEL T. KIRCHHOFF, APPELLANT.

Filed June 28, 2016.    No. A-15-935.

Appeal from the District Court for Lancaster County: STEVEN D. BURNS, Judge. Affirmed.

Joseph Nigro, Lancaster County Public Defender, Paul E. Cooney, and Megan Theesen-Fenton, Senior Certified Law Student, for appellant.

Douglas J. Peterson, Attorney General, and George R. Love for appellee.

INBODY, PIRTLE, and BISHOP, Judges.

BISHOP, Judge.

## I. INTRODUCTION

Following a bench trial, Michael T. Kirchhoff was convicted of possession of a controlled substance, a Class IV felony, pursuant to Neb. Rev. Stat. § 28-416(3) (Cum. Supp. 2014). The court also found him to be a habitual criminal pursuant to Neb. Rev. Stat. § 29-2221 (Reissue 2008), and sentenced him to a mandatory minimum of 10 years' to 12 years' imprisonment. Kirchhoff appeals, challenging his conviction and sentence on a number of grounds. For the following reasons, we affirm.

## II. BACKGROUND

The State originally charged Kirchhoff by information on August 8, 2014, with possession with intent to deliver a controlled substance, a Class II felony, pursuant to § 28-416(1) and (2)(a) (count I); possession of a controlled substance (count II); and first degree unlawful possession of

- 1 -

explosive materials, a Class IV felony, pursuant to Neb. Rev. Stat. § 28-1215 (Reissue 2008) (count III). The State subsequently filed an amended information with the same three charges, each containing a habitual criminal enhancement pursuant to § 29-2221.

Meanwhile, Kirchhoff, through his court-appointed attorney, filed a motion to suppress all evidence obtained as the result of an allegedly unlawful search and seizure of his person and the vehicle he was driving on June 26, 2014. Kirchhoff later retained a private attorney, who filed an amended motion to suppress on February 9, 2015.

In the amended motion to suppress, Kirchhoff alleged that on June 26, 2014, without reasonable suspicion or probable cause, officers conducted a traffic stop of the vehicle Kirchhoff was driving and then detained Kirchhoff "for longer than reasonably necessary to accomplish the alleged reason for the stop." The motion further alleged that officers questioned Kirchhoff while he was in custody without advising him of his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966) (*Miranda* rights).

A hearing on the amended motion to suppress took place on March 17, 2015. The sole witness at the hearing was Officer Phillip Tran of the Lincoln police department, who testified as follows. At 4:46 a.m. on June 26, 2014, he was on routine patrol in Lincoln, Nebraska, "running" license plate numbers through the computer in his police cruiser. He ran the license plate for a gold Acura and discovered that the registered owner, David Kohles, had a suspended driver's license. Officer Tran observed Kohles' booking photo on his computer; he appeared to be a 40-year-old white male with dark hair and a beard.

Officer Tran pulled out into traffic and stopped next to the Acura at a stoplight. He observed the driver of the Acura as a white male with dark hair and a beard, but he did not have a clear enough view to identify the driver as Kohles.

The Acura turned into a Walmart parking lot, and Officer Tran followed. The Acura parked in a parking spot, and Officer Tran parked to the back and to the left of the Acura. A photograph was received into evidence showing how the officer's cruiser was parked in relation to the Acura. According to Officer Tran, the location of his police cruiser would not have prevented the Acura from backing out of its parking spot. Officer Tran did not activate his cruiser's overhead lights.

Officer Tran observed the driver of the Acura open the door and begin exiting the vehicle, placing a foot on the ground. The officer then approached the man and asked him his name, which the driver said was Michael Kirchhoff. Using a conversational tone, Officer Tran told the driver he was not in trouble but that the officer believed he was Kohles. The driver had returned his foot to the inside of the vehicle, and remained seated in the driver's seat. The officer asked the driver for identification, because he believed the driver "still looked like he could be . . . Kohles."

The driver retrieved his wallet from his front left pants pocket. As the driver pulled the wallet out of his pocket, Officer Tran observed a clear plastic bag with a white crystal substance fall out of the pocket. The driver attempted to conceal the bag underneath his leg. Officer Tran ordered the driver to stop and show his hands, and the driver then attempted to conceal the bag under the seat. At this point, Officer Tran displayed his Taser and ordered the driver to show his hands and exit the vehicle. Officer Tran then placed the driver in handcuffs, at which time the officer retrieved the plastic bag from the driver's hand. Based on his training and experience,

Officer Tran believed the white crystal substance in the bag was methamphetamine. A subsequent search of the vehicle revealed more drugs, drug paraphernalia, and illegal fireworks.

Officer Tran testified that while other officers searched the Acura, he sat in the driver's seat of his cruiser while Kirchhoff was handcuffed in the back seat. Officer Tran made two recordings of conversations he had with Kirchhoff, both of which were contained on a DVD received into evidence as exhibit No. 1. Officer Tran explained that he activated his recording device because Kirchhoff was "trying to speak to [him] and [he] was trying to tell [Kirchhoff] that [he couldn't] talk to him until [he] read him *Miranda*." According to Officer Tran, Kirchhoff was "trying to make statements about what [the officers] found."

At the beginning of the first recording, Kirchhoff can be heard saying something to the effect of "it was all mine." Officer Tran then said, "Hold on, like I said, I gotta read you *Miranda* warnings." The officer then advised Kirchhoff of his *Miranda* rights. During the subsequent conversation, Kirchhoff admitted ownership of all of the drugs and drug paraphernalia located in the car. Kirchhoff also admitted to having smoked methamphetamine approximately one hour prior.

Upon further questioning at the suppression hearing, Officer Tran explained that during the conversations in the police cruiser, Kirchhoff responded coherently and did not appear to be under the influence of drugs or alcohol. Kirchhoff never indicated that he did not want to talk to the officer and never expressed a desire to consult an attorney. Officer Tran denied making any promises to Kirchhoff or using force or coercion to obtain a statement.

On cross-examination, Officer Tran testified that he had been trained in using facial characteristics to identify individuals. However, even after viewing Kohles' photograph, when he approached the Acura in the Walmart parking lot, it appeared to him that Kirchhoff could have been Kohles.

On April 20, 2015, the court entered an order overruling Kirchhoff's motion to suppress. The court found that Officer Tran's initial contact with Kirchhoff was a "level 2 stop" requiring reasonable suspicion. The court then found that the officer had reasonable suspicion to make contact with the driver of Kohles' vehicle and to request the driver's identification. The court reasoned that simply because Kirchhoff identified himself as being someone other than Kohles, this did not require Officer Tran to terminate the investigation. Rather, Officer Tran was permitted to "require more than a simple announcement of identity." Because the request for the driver's license was reasonable, there was no basis for suppressing any of the evidence seized after the plastic bag of suspected methamphetamine fell out of Kirchhoff's pocket into plain view while Kirchhoff was retrieving his identification.

Addressing the issue of Kirchhoff's statements to police, the court found that Kirchhoff's statements to Officer Tran were made freely, voluntarily, and intelligently. Specifically, the incriminating statement Kirchhoff made at the beginning of the audio recording was not in response to any questioning by the officer. Officer Tran interrupted Kirchhoff and advised him of his *Miranda* rights. Kirchhoff acknowledged his rights and agreed to speak with Officer Tran. Kirchhoff then made additional incriminating statements, including claiming ownership of all of the drugs and drug paraphernalia in the car.

After the court overruled Kirchhoff's motion to suppress, the State filed a second amended information, charging Kirchhoff with a single count of possession of a controlled substance, with a habitual criminal enhancement. Specifically, the habitual criminal enhancement alleged:

[T]he defendant has been twice convicted of a crime, sentenced and committed to prison, in this or any other state or by the United States or once in this state and once at least in any other state or by the United States, for terms of not less than one year each, and upon conviction of a felony committed in this state, the defendant is deemed to be a habitual criminal.

Kirchhoff pleaded not guilty to the second amended information and voluntarily waived his right to a jury trial.

On July 13, 2015, a stipulated bench trial was held. The State's only evidence was exhibit No. 9, a compilation of police reports and photographs. The exhibit was received into evidence over Kirchhoff's objection, which was based on the arguments raised in his amended motion to suppress. At the conclusion of the brief trial, the State requested to proceed with a hearing on the habitual criminal enhancement, to which Kirchhoff's counsel indicated he had no objection.

Once the hearing on the habitual criminal enhancement commenced, the Stated offered exhibits No. 6 and No. 7 as evidence of Kirchhoff's two prior federal felony convictions. Kirchhoff's counsel objected to both exhibits on grounds that the second amended information did not allege with sufficient particularity that Kirchhoff was a habitual criminal. The court overruled this objection. Kirchhoff's counsel further objected to exhibit No. 7 on the ground that it did not establish that Kirchhoff had been represented by counsel at a suppression hearing in that proceeding. The State then offered exhibit No. 8, the minutes of the suppression hearing, showing that Kirchhoff had been represented by counsel. Kirchhoff's counsel objected on the basis that exhibit No. 8 was not certified. The State responded, "I guess I would indicate from some conversations with [Kirchhoff's counsel] . . . I thought that that would be sufficient. I can get a certified copy if the court finds . . . [it] is not sufficient." Kirchhoff's counsel then asked if the attorneys could speak off the record with the trial court regarding the exhibit. Following an off-the-record discussion, the court continued the hearing to a later date to allow the State to obtain a certified copy of the exhibit.

The enhancement hearing resumed on July 21, 2015, and the State offered exhibit No. 10, a certified copy of the minutes of the suppression hearing. Kirchhoff's counsel did not object, and the court received the exhibit into evidence. At the conclusion of the hearing, the court took the case under advisement.

On August 6, 2015, the court entered a written order finding Kirchhoff guilty of possession of a controlled substance and finding him to be a habitual criminal.

Following a sentencing hearing on September 18, 2015, the court sentenced Kirchhoff to a mandatory minimum of 10 years' to 12 years' imprisonment. Kirchhoff timely appealed to this court.

## III. ASSIGNMENTS OF ERROR

Kirchhoff assigns, restated, that (1) the district court erred in overruling his motion to suppress, (2) the district court erred in entering a guilty verdict unsupported by admissible evidence, (3) he received ineffective assistance of counsel, (4) the district court erred in finding he was a habitual criminal, and (5) his sentence is excessive.

## IV. STANDARD OF REVIEW

In reviewing a trial court's ruling on a motion to suppress based on a claimed violation of the Fourth Amendment, we apply a two-part standard of review. *State v. Wells*, 290 Neb. 186, 859 N.W.2d 316 (2015). Regarding historical facts, we review the trial court's findings for clear error. *Id.* But whether those facts trigger or violate Fourth Amendment protections is a question of law that we review independently of the trial court's determination. *Id.*

A claim that defense counsel provided ineffective assistance presents a mixed question of law and fact. *State v. Sidzyik*, 281 Neb. 305, 795 N.W.2d 281 (2011). In order to establish a right to relief based on a claim of ineffective assistance of counsel, the defendant has the burden, in accordance with *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), to show that counsel's performance was deficient and that counsel's deficient performance prejudiced the defense in his or her case. *Sidzyik, supra*. The fact that an ineffective assistance of counsel claim is raised on direct appeal does not necessarily mean that it can be resolved. *Id.* The determining factor is whether the record is sufficient to adequately review the question. *Id.*

An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. *State v. Ortega*, 290 Neb. 172, 859 N.W.2d 305 (2015). A judicial abuse of discretion exists when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition. *State v. McGuire*, 286 Neb. 494, 837 N.W.2d 767 (2013).

## V. ANALYSIS

### 1. MOTION TO SUPPRESS

Kirchhoff's first assignment of error is that the district court erred in overruling his motion to suppress. In support, he offers two arguments: (1) "Officer Tran did not have a legal right to be outside of [Kirchhoff's] vehicle at the point when [Kirchhoff] removed his wallet from his pocket, and with it, the clear bag that was eventually seized," brief for appellant at 21; and (2) Kirchhoff was subject to custodial interrogation without having been advised of his *Miranda* rights.

### (a) Seizure of Evidence in Plain View

It is well settled under the Fourth Amendment that warrantless searches and seizures are per se unreasonable, subject to a few specifically established and well-delineated exceptions. *State v. Tucker*, 262 Neb. 940, 636 N.W.2d 853 (2001). One of those exceptions, the plain view doctrine, justifies a warrantless seizure if (1) a law enforcement officer has a legal right to be in the place from which the object subject to seizure could be plainly viewed, (2) the seized object's incriminating nature is immediately apparent, and (3) the officer has a lawful right of access to the seized object itself. *State v. Reinpold*, 284 Neb. 950, 824 N.W.2d 713 (2013).

Kirchhoff focuses on the first prong of the plain view doctrine. He argues that Officer Tran did not have a legal right to be outside of the vehicle when he observed Kirchhoff remove his wallet from his pocket. He maintains that once he provided his name to Officer Tran, the officer was "able to clearly see [Kirchhoff's] face and compare it to the photograph of . . . Kohles." Brief for appellant at 21. According to Kirchhoff, this should have "dispel[led] any suspicion" that he was Kohles, and "any further contact with [Kirchhoff] was outside the scope of the purpose for contacting [him]." *Id*.

The State responds that while Officer Tran had reasonable suspicion to request Kirchhoff's identification, this is irrelevant, because the officer's initial interaction with Kirchhoff did not constitute a Fourth Amendment seizure.

To determine whether an encounter between an officer and a citizen reaches the level of a seizure under the Fourth Amendment, an appellate court employs the analysis set forth in *State v. Van Ackeren*, 242 Neb. 479, 495 N.W.2d 630 (1993), which describes the three levels, or tiers, of police-citizen encounters. *State v. Gilliam*, 292 Neb. 770, 874 N.W.2d 48 (2016). A tier-one police-citizen encounter involves the voluntary cooperation of the citizen elicited through noncoercive questioning and does not involve any restraint of liberty of the citizen. *Id*. A tier-two police-citizen encounter constitutes an investigatory stop as defined by *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968), and involves a brief, nonintrusive detention during a frisk for weapons or preliminary questioning. *State v. Gilliam, supra*. A tier-three police-citizen encounter constitutes an arrest, which involves a highly intrusive or lengthy search or detention. *Id*.

Because tier-one encounters do not rise to the level of a seizure, they are outside the realm of Fourth Amendment protection. *State v. Gilliam, supra*. However, tier-two and tier-three police-citizen encounters are seizures sufficient to invoke the protections of the Fourth Amendment. *Id*.

Generally, a seizure in the Fourth Amendment context occurs only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he or she was not free to leave. *State v. Gilliam, supra*. In addition to situations where an officer directly tells a suspect that he or she is not free to go, circumstances indicative of a seizure may include the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the citizen's person, or the use of language or tone of voice indicating the compliance with the officer's request might be compelled. *Id*. A police officer's mere questioning of an individual in a public place, such as asking for identification, is not a seizure subject to Fourth Amendment protections, so long as the questioning is carried on without interrupting or restraining the person's movement. *Id*.

In *State v. Gilliam*, 292 Neb. 770, 874 N.W.2d 48 (2016), while responding to a report of a white truck of a certain make and model parked partially on the curb and partially on the street, an officer located a truck matching the description parked legally on the street. The truck was running with its lights on. The officer pulled behind the truck and activated his cruiser's overhead lights. After exiting his cruiser, the officer knocked on the truck's window, directed the driver to roll down the window, and asked for a driver's license. After further investigation, the driver was arrested for DUI.

The Nebraska Supreme Court held that the initial interaction, during which the officer requested the driver's license, was a first-tier police-citizen encounter that was not subject to Fourth Amendment protections. *State v. Gilliam, supra*. The court explained that the officer was merely questioning the defendant in a public place where he voluntarily parked. *Id*. There was no weapon displayed, use of a forceful tone of voice, or other evidence suggesting that the defendant was not free to leave. *Id*. Although the cruiser's overhead lights were on, our Supreme Court determined this was not enough to cause a reasonable person to believe that he or she was not free to leave. *Id*.

We agree with the State that no Fourth Amendment seizure occurred in the present case. Officer Tran discovered through his cruiser's computer system that Kohles, the owner of the Acura the officer observed being operated on the road, had a suspended license. Officer Tran first attempted to determine whether the driver was Kohles by pulling up next to the Acura at a stop light. Because his view was not clear enough to identify the driver, Officer Tran followed the Acura into a Walmart parking lot. The Acura parked in a parking spot, and Officer Tran parked his cruiser to the back and to the left of the Acura, such that the Acura had room to back out. When the Acura's driver began to exit his vehicle, Officer Tran approached and asked for his name. Using a conversational tone, Officer Tran informed the driver that he was not in trouble and asked for his identification. Officer Tran never activated the overhead lights on his police cruiser.

The facts of this case are very similar to those of *State v. Gilliam, supra*. As in that case, there was no use of force, display of a weapon, or other show of authority that would have caused Kirchhoff to reasonably believe he was not free to leave. Rather, Officer Tran simply approached the Acura while it was parked in a public place and, using a conversational tone, requested the operator's name and identification. In fact, because Officer Tran did not activate his overhead lights, there was even less show of authority than in *Gilliam*, where the officer activated his overhead lights. Under these circumstances, we conclude that no Fourth Amendment seizure occurred. Therefore, Officer Tran had a legal right to be standing outside of the Acura when he requested Kirchhoff's identification, and the seizure of the plastic bag of suspected methamphetamine, which fell out of Kirchhoff's pocket into plain view along with his wallet, was constitutionally valid.

As a matter of completeness, we note that even if Officer Tran's initial interaction with Kirchhoff did rise to the level of a Fourth Amendment seizure, we agree with the district court that the officer acted within the permissible scope of the investigation when he requested Kirchhoff's identification. See *State v. Beal*, 21 Neb. App. 939, 846 N.W.2d 282 (2014) (an officer's investigation following a lawful traffic stop may reasonably include asking the driver for an operator's license and registration). See, also, Neb. Rev. Stat. § 60-489 (Reissue 2010) ("[an] operator's license . . . shall be presented by the licensee for examination . . . upon demand by any . . . police or peace officer").

(b) Suppression of Statements

Kirchhoff also argues the district court should have suppressed any statements he made to police during the encounter, because he was subject to custodial interrogation without having been advised of his *Miranda* rights.

*Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), prohibits the use of statements stemming from a defendant's custodial interrogation unless the prosecution demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. *State v. McKinney*, 273 Neb. 346, 730 N.W.2d 74 (2007). *Miranda* protections apply only when a person is both in custody and subject to interrogation. *State v. Juranek*, 287 Neb. 846, 844 N.W.2d 791 (2014).

Kirchhoff made his incriminating statements while in the back seat of a police cruiser, at which point he was in custody. See *State v. Juranek, supra* (an individual is in custody for purposes of *Miranda v. Arizona, supra*, when handcuffed and placed in the back seat of a police cruiser). However, as the district court determined, there is no indication that Kirchhoff was subject to police interrogation when he volunteered his first incriminating statement(s) to Officer Tran. Rather, as Officer Tran testified, Kirchhoff began volunteering statements before he could advise him of his *Miranda* rights. Officer Tran turned on his audio recorder, interrupted Kirchhoff, and advised him of his *Miranda* rights. The recording contained on exhibit No. 1 confirms this sequence of events. Kirchhoff then continued talking with Officer Tran, making additional incriminating statements. No *Miranda* violation has been shown, and the district court properly overruled Kirchhoff's motion to suppress his statements to police. See *State v. Juranek, supra* (statements that are spontaneously volunteered by the accused are not the result of interrogation and are admissible).

## 2. SUFFICIENCY OF EVIDENCE

Kirchhoff's second assignment of error is that the district court's guilty verdict was unsupported by admissible evidence. He maintains that without the evidence obtained as a result of the unlawful search and seizure of his person and vehicle, there was "no evidence that [he] was in possession of a controlled substance." Brief for appellant at 23.

Kirchhoff's challenge to the sufficiency of the evidence is dependent upon the success of his motion to suppress. Because we have already determined that the district court properly overruled Kirchhoff's motion to suppress, this resolves Kirchhoff's sufficiency-of-the-evidence argument. Kirchhoff does not contend that the evidence, if it was properly seized and admitted, was insufficient to convict.

## 3. INEFFECTIVE ASSISTANCE OF COUNSEL

Kirchhoff's third assignment of error is that he received ineffective assistance of counsel. He argues that his trial counsel was ineffective in three ways: (1) counsel failed to move to quash the second amended information; (2) counsel failed to argue at the suppression hearing that his statements were obtained in violation of *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), and *Jackson v. Denno*, 378 U.S. 368, 84 S. Ct. 1774, 12 L. Ed. 2d 908 (1964); and (3) counsel failed to object to the continuation of the hearing on the habitual criminal enhancement.

In order to prevail on a claim of ineffective assistance of counsel at trial, the defendant has the burden, in accordance with *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), to show that counsel's performance was deficient; that is, counsel's performance

did not equal that of a lawyer with ordinary training and skill in criminal law in the area. *State v. Dunster*, 278 Neb. 268, 769 N.W.2d 401 (2009). The defendant also must show that counsel's deficient performance prejudiced the defense in his or her case. *Id*. This requires the defendant to demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. *Id*. The two prongs, deficient performance and prejudice, may be addressed in either order. *Id*.

In most instances, claims of ineffective assistance of trial counsel cannot be reached on direct appeal, because the record does not contain facts necessary to decide either prong of the analysis under *Strickland v. Washington, supra. State v. Young*, 279 Neb. 602, 780 N.W.2d 28 (2010). Appellate courts reach such claims only where it is clear from the record that the claim is without merit or where trial counsel's error is so egregious and resulted in such a high level of prejudice that no tactic or strategy could overcome the effect of the error. *Id*.

### (a) Motion to Quash

Kirchhoff argues that his counsel was ineffective for failing to follow the proper procedure for challenging the sufficiency of the second amended information. According to Kirchhoff, the correct procedure was to file a motion to quash the information. Instead, counsel waited until the hearing on the habitual criminal enhancement, and then objected to exhibits No. 6 and No. 7 on grounds that the second amended information did not allege with sufficient particularity that Kirchhoff was a habitual criminal. Kirchhoff suggests that the second amended information was deficient in that it did not include "the specific priors being used for the habitual criminal enhancement." Brief for appellant at 25.

The habitual criminal statute provides, in pertinent part, that "[w]hen punishment of an accused as a habitual criminal is sought, the facts with reference thereto shall be charged in the indictment or information which contains the charge of the felony upon which the accused is prosecuted." § 29-2221(b). Discussing this provision, the Nebraska Supreme Court has explained that the essential allegations which an information must contain for a habitual criminal charge are that said person has been (1) twice previously convicted of crime, (2) sentenced, and (3) committed to prison for terms not less than 1 year each. *State v. Harig*, 192 Neb. 49, 218 N.W.2d 884 (1974). According to the Nebraska Supreme Court, "[t]hese are 'the facts with reference thereto' referred to in section 29-2221." *Id*. at 55, 218 N.W.2d at 889. As the Nebraska Supreme Court further explained, "While it is undoubtedly desirable and helpful to have the dates of the prior felonies alleged in the information charging a defendant with being an habitual criminal, we do not find that the absence of such allegation would necessarily render the information invalid." *Id*.

Applying these principles here, we conclude that Kirchhoff has not shown that his counsel's allegedly deficient performance resulted in any prejudice. Even if his counsel had followed the proper procedure of filing a motion to quash the second amended information, the motion would not have been successful. The second amended information alleged, in pertinent part, that "the defendant has been twice convicted of a crime, sentenced and committed to prison . . . for terms of not less than one year each." Pursuant to *State v. Harig, supra*, this was all that was required, even if more detailed allegations would have been "desirable and helpful." *Id*. at 55, 218 N.W.2d at 889.

(b) Suppression Hearing

Kirchhoff next argues that his counsel was ineffective "because he failed to argue at the suppression hearing that [Kirchhoff] was subjected to custodial interrogation absent a proper waiver of his *Miranda* rights and that [Kirchhoff's] statements were involuntary pursuant to *Jackson v. Denno*[, 378 U.S. 368, 84 S. Ct. 1774, 12 L. Ed. 2d 908 (1964),] due to intoxication from recent methamphetamine use." Brief for appellant at 25-26. He notes that the district court specifically found that his statements "were admissible," but contends his motion to suppress the statements likely would have been sustained "[h]ad trial counsel made proper arguments at the suppression hearing." *Id*. at 26. He does not flesh out what those proper arguments might have been.

As an initial matter, we have already determined that the police did not obtain any statements from Kirchhoff in violation of *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). Kirchhoff's counsel raised this issue in the amended motion to suppress and, as we explained above, the district court properly overruled this aspect of the motion. Therefore, Kirchhoff has failed to show any deficient performance or prejudice relating to this issue.

We also note that, although Kirchhoff's counsel did not specifically make an argument based on *Jackson v. Denno, supra*, at the suppression hearing, the court nevertheless addressed the issue. During the State's questioning of Officer Tran, the State at one point asked the court, "[A]re we addressing *Jackson v. Denno* in this hearing as well?" The court responded, "Yes." The State then asked the officer a line of questions relevant to a *Jackson* inquiry. In its order overruling the amended motion to suppress, the court noted that, pursuant to *Jackson*, it was required to consider the totality of the circumstances to determine whether Kirchhoff's statements were made freely, intelligently, and voluntarily. The court found that Kirchhoff's statements were so made. Based on this procedural background, we conclude that Kirchhoff has not shown any prejudice arising out of counsel's failure to make an argument based on *Jackson*, as we now explain.

Under *Jackson v. Denno, supra*, courts must institute fair procedures to determine whether a confession is voluntary, because involuntary or coerced confessions cannot be introduced into evidence. *State v. Grant*, 293 Neb. 163, 876 N.W.2d 639 (2016). While the totality of the circumstances weighs on the question of whether a statement was voluntary, coercive police activity is a necessary predicate to the finding that a confession is not voluntary. *Id*.

Officer Tran testified that during his conversations with Kirchhoff in the police cruiser, Kirchhoff responded coherently and did not appear to be under the influence of drugs or alcohol. Officer Tran also denied making any promises to Kirchhoff or using force or coercion to obtain a statement. He described his tone with Kirchhoff as conversational, and the recordings on exhibit No. 1 are consistent with that characterization. Based on this evidence, the court properly found that Kirchhoff's statements to Officer Tran were made freely, voluntarily, and intelligently. Because the court's ruling in this regard was correct, Kirchhoff has not shown that counsel's failure to make an argument specifically based on *Jackson v. Denno*, 378 U.S. 368, 84 S. Ct. 1774, 12 L. Ed. 2d 908 (1964), resulted in any prejudice to him.

(c) Enhancement Hearing

Kirchhoff next argues that his trial counsel rendered deficient performance when he failed to object to the State's request to continue the hearing on the habitual criminal enhancement to obtain a certified copy of an exhibit. He contends this failure to object "essentially g[ave] the [S]tate a second bite at the apple." Brief for appellant at 26.

A brief summary of the relevant procedural background is useful. At the conclusion of trial, the State requested to proceed with the hearing on the habitual criminal enhancement. During the enhancement hearing, the State offered exhibit No. 8, showing that Kirchhoff had been represented by counsel at a suppression hearing in one of the underlying criminal cases resulting in a prior felony conviction. Kirchhoff's counsel objected because the exhibit was not certified. The State responded, "I guess I would indicate from some conversations with [Kirchhoff's counsel] . . . I thought that that would be sufficient. I can get a certified copy if the court finds . . . [it] is not sufficient." Kirchhoff's counsel then asked if the attorneys could speak off the record with the trial court regarding the exhibit. Following an off-the-record discussion, the court continued the hearing to a later date to allow the State to obtain a certified copy of the exhibit. At the resumed enhancement hearing on July 21, 2015, the State offered exhibit No. 10, a certified copy of the exhibit. Kirchhoff's counsel did not object, and the court received the exhibit into evidence.

Given this procedural background, we conclude the record before us is insufficient to address Kirchhoff's claim that his counsel was ineffective for failing to object to the continuation of the enhancement hearing. The court granted the continuance after defense counsel requested an opportunity to address the court off the record. We do not know what transpired during that discussion, including whether defense counsel objected to the continuance, or explained a reason for not doing so. Therefore, we decline to address this specific ineffective-assistance-of-counsel claim on direct appeal.

4. HABITUAL CRIMINAL ENHANCEMENT

Kirchhoff's fourth assignment of error is that the State failed to prove the elements required for the habitual criminal enhancement. However, his only argument in support of this assigned error is that, although the State offered exhibit No. 10 to establish that he was represented by counsel during the proceedings resulting in one of his prior felony convictions, the State did so "at a second enhancement hearing, which was improperly held." Brief for appellant at 27.

Because the record does not show what transpired during the off-the-record discussion that immediately preceded the court's decision to continue the enhancement hearing, we cannot agree with Kirchhoff that the continuation of the enhancement hearing was improper. Under these circumstances, Kirchhoff's argument challenging the continuation of the hearing will be better addressed in the context of a postconviction claim of ineffective-assistance-of-counsel, in which Kirchhoff can pursue the issue of whether counsel was ineffective for failing to object to the continuance. Based on the limited record before us, we find no error in the court's decision to grant the continuance. Furthermore, based on the evidence presented, the court did not err in finding Kirchhoff to be a habitual criminal.

## 5. EXCESSIVE SENTENCE

Kirchhoff's final assignment of error is that the district court abused its discretion by imposing an excessive sentence. A sentence imposed within statutory limits will not be disturbed on appeal absent an abuse of discretion by the trial court. *State v. Williams*, 282 Neb. 182, 802 N.W.2d 421 (2011).

Kirchhoff was convicted of possession of a controlled substance, a Class IV felony, pursuant to § 28-416(3). Because the court found Kirchhoff to be a habitual criminal, however, the sentencing range was a mandatory minimum of 10 years' imprisonment up to 60 years' imprisonment. § 29-2221(1).

Given the applicable sentencing range, Kirchhoff's sentence was not excessive and, in fact, was the mandatory minimum sentence of 10 years' imprisonment. See § 29-2221(1). See, also, *State v. Nevels*, 235 Neb. 39, 453 N.W.2d 579 (1990) (the minimum portion of an indeterminate sentence measures its severity). Kirchhoff was not statutorily eligible for a lesser term of imprisonment, and, as a habitual criminal, he also was not eligible for probation. Neb. Rev. Stat. § 29-2262(1) (Cum. Supp. 2014). Because Kirchhoff received the mandatory minimum sentence, the court did not abuse its discretion in sentencing Kirchhoff in the manner it did.

## VI. CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court for Lancaster County.

AFFIRMED.